Clyde R. COMBEE, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–786.

United States Court of Veterans Appeals.

June 18, 1993.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY *, MANKIN, HOLDAWAY *, IVERS * and STEINBERG, Associate Judges.

## ORDER

PER CURIAM.

On January 19, 1993, a three-judge panel of the Court (panel marked with an *) issued a decision in the above-captioned appeal. 4 Vet.App. 78. On February 2, 1993, appellant timely filed a motion for review by the Court en banc, pursuant to Rule 35(b) of this Court's Rules of Practice and Procedure. At the request of members of the Court, the Secretary filed a response on March 5, 1993. Upon consideration of the foregoing, it is by the Court en banc

ORDERED that appellant's motion for review by the Court is denied.

STEINBERG, Associate Judge, with whom KRAMER, Associate Judge, joins, dissenting:

I would grant en banc review of the Court's opinion in *Combee v. Principi*, 4 Vet.App. 78 (1993), which concludes that the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984) (1984 Act), and the Department of Veterans Affairs (VA) regulation prescribed thereunder (38 C.F.R. § 3.311b (1992)) set forth the "exclusive" means for establishing service con-

nection for a disease claimed to have resulted from exposure [1] to ionizing radiation. The Court's decision was based on its conclusion that a VA General Counsel opinion, construing the law and regulation as establishing such an exclusive process, was a "reasonable" interpretation of the statute and regulation and that such a reasonable interpretation was entitled to deference.

I disagree strongly with the Court's conclusion sustaining VA's interpretation of the particular regulations on the basis that VA's interpretation of the statute and regulations is "reasonable". In my view, neither VA interpretation is "reasonable". Accordingly, I believe en banc review is indicated, have so voted, and dissent from the Court's denial of appellant's motion for en banc review. I thank the Secretary of Veterans Affairs (Secretary) and the appellant for the valuable contributions they have made in their briefs and supplemental pleadings.

## I. Summary

Because VA's interpretation of the regulations applied in *Combee* purports to be grounded in and dictated by its interpretation of the 1984 Act, I begin my analysis with the construction of the applicable statutory provisions before discussing the meaning of the regulatory provisions applied. For the reasons set forth below, my principal conclusions are: (1) 38 U.S.C. §§ 310 and 354(a) as in existence when Public Law 98–542 was enacted in 1984 established universally applicable rules requiring a case-by-case adjudication process as to *all* claims for service-connected disability; (2) the 1984 Act, on its face, does not require VA to establish an *exclusive* list of radiogenic diseases; (3) sections 310 and 354(a) were neither *expressly* repealed nor expressly limited by the 1984 Act as to radiation-exposure claims; (4) those sections were not *implicitly* so repealed or

1. The Court's opinion does not distinguish between claims based on the types of radiation exposure to which the 1984 Act, by its terms, expressly applies (see note 11, *infra*), and other types of radiation exposure not covered by the Act. Rather, the Court's holding would appear to apply, in my view totally without justification, to claims based on any form of radiation

exposure. *See* part II.E., *infra*. Of course, such application would be dictum since Mr. Combee's asserted exposure occurred during one of the two types of activities expressly covered by the 1984 Act—the American occupation of Nagasaki, Japan, prior to July 1, 1946. Pub.L. No. 98–542, § 5(a)(1)(B), 98 Stat. 2725, 2727 (1984); *see Combee v. Principi*, 4 Vet.App. 78, 80 (1993).

limited by that law, given the total absence of legislative history expressing such a Congressional intention; (5) VA's interpretation of the 1984 Act as exclusive is not a "reasonable" one, even if that were the correct standard for our review of the validity of the Act[2]; and (6) the non-exclusive nature of the 1984 Act is properly reflected in VA's regulations in effect at the time of the *Combee* decision.[3]

## II. Construction of the 1984 Act and Title 38

As to the conclusion reached in the *Combee* opinion that VA is "reasonable" in construing the 1984 Act to have directed the Secretary to establish an *exclusive* list of diseases for which service connection may be granted on the basis of in-service radiation exposure, 4 Vet.App. at 94, I find numerous deficiencies.

**2.** For the reasons set forth in part III. and note 22, *infra*, I believe that the "reasonableness" standard may not be the correct standard for review of whether VA's regulations are authorized by the statute.

**3.** As to the invalidity of the new regulation, see part IV, *infra*. For the reasons set forth in part II.E., *infra*, I also find the panel opinion in error in purporting to apply its exclusivity construction to the adjudication of disability claims based on *any* type of in-service exposure to ionizing radiation.

**4.** These title 38, U.S.Code, section numbers were redesignated as 1110 and 1154 on August 6, 1991 by the Department of Veterans Affairs [VA] Codification Act, Pub.L. No. 102–83, § 5, 105 Stat. 378, 406 (1991). In this dissent, the title 38 designations in effect in 1984 when Public Law 98–542 was enacted will be used.

**5.** The *Combee* holding also seems inconsistent with many VA beneficial regulations, prescribed pursuant to 38 U.S.C. §§ 310 and 354(a) and other authority, oriented toward individualized claims adjudication. Examples are VA regulations which provide that VA "administer[s] the law under a broad and liberal interpretation consistent with the facts of each individual case" (38 C.F.R. § 3.303(a) (1992)) and must "grant every benefit that can be supported by law while protecting the interests of the government" (38 C.F.R. § 3.103(a) (1992)).

**6.** Section 310 provided in 1984, and still provides:

For disability resulting from personal injury suffered or disease contracted in line of

### A. Implicit Repealer or Amendment

At bottom, what the *Combee* panel decided is that the 1984 Act, specifically section 5 of that Act, 98 Stat. at 2727, repealed or amended 38 U.S.C. §§ 310 and 354(a)[4], described below, *by implication* to render section 310 partially and section 354(a) wholly inapplicable to the adjudication of nuclear-detonation radiation claims.[5]

Code sections 310 and 354(a) provide entitlement to service-connected disability compensation generally to a veteran who can demonstrate that his or her disability was incurred or aggravated during active service (§ 310)[6] and that in *each case* of a veteran seeking service-connected disability compensation, consideration must be given to the places, types, and circumstances of *that veteran's* service (§ 354)[7]. It is indisputable that the 1984 Act made no express amendment to or qualification of Code sections 310 and 354(a). That leaves only the

duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was *discharged or released under conditions other than dishonorable* from the period of service in which said injury or disease was incurred, or preexisting disease or injury was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the person's own willful misconduct or abuse of alcohol or drugs.

38 U.S.C. § 310 (1982) (redesignated § 1110 (West 1991)).

**7.** In 1984, 38 U.S.C. § 354(a) provided, and was amended by Public Law 98–542 to add the emphasized material:

(a) The Secretary shall include in the regulations pertaining to service-connection of disabilities *(1)* additional provisions in effect requiring that in each case where a veteran is seeking service connection for any disability due consideration shall be given to the places, types, and circumstances of such veteran's service as shown by such veteran's service record, the official history of each organization in which such veteran served, such veteran's medical records, and all pertinent medical and lay evidence, *and (2) the provisions required by section 5 of the Veterans' Dioxin and Radiation Exposure Compensation Standards Act (Public Law 98–542; 98 Stat. 2727).*

38 U.S.C.A. § 1154(a) (West 1991) (emphasis added) (formerly § 354(a) (1982)).

possibility that Congress modified those provisions by necessary implication in enacting that public law. That is what the *Combee* opinion decided without saying so.

In essence, the Court in *Combee* has concluded that Congress, in enacting the 1984 Act, intended to add "Notwithstanding sections 310 and 354(a) of title 38, United States Code," at the outset of section 5 and that by necessary implication Congress made this repealer/amendment as to the universally applicable policies and processes and did so without *any* reference to such a result in a Committee report, floor debate, or joint explanatory statement. (Although the Court does not so state, its analysis would be equally applicable to claims for asserted residuals of exposure to Agent Orange.[8])

A substantial and long-standing body of Supreme Court precedent establishes the "cardinal principle of statutory construction that repeals by implication are not favored", *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976), and that "where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective", *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984).[9]

The Supreme Court has made clear that an implied repeal of all or part of a statute will be found only under the following specific, very limited, circumstances:

(1) where provisions in the two acts are in *irreconcilable conflict,* the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2)

if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, *the intention of the legislature to repeal must be clear and manifest.*

*Posadas v. National City Bank of New York,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936) (emphasis added); *see also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982); *Radzanower,* 426 U.S. at 154, 96 S.Ct. at 1993.

These fundamental tenets of statutory construction are not addressed by the opinion. One reason for that is, I believe, because of the way that the issue is posed as being whether VA's interpretation of the law is "reasonable", as discussed in part III., *infra*. The other is because posing the question as whether there was an implicit repealer would preclude the result reached by the Court.

Under the test established by *Posadas, supra,* it is clear that the 1984 Act does not "cover[ ] the whole subject" encompassed by those sections. Therefore, an implicit repeal of those provisions as they apply to radiation-exposed veterans may be found only if the 1984 Act is in "irreconcilable conflict" with those provisions and there is a "clear and manifest" legislative intent partially to repeal them. *Ibid.* In determining whether there is such an "irreconcilable conflict", "whenever possible, statutes should be read consistently", *Kremer, supra,* and "as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act", *Posadas, supra.*[10]

---

**8.** On February 6, 1991, the Agent Orange Act of 1991, Public Law 102–4, 105 Stat. 11 (1991) was enacted. It added to title 38 a new section (§ 1116) establishing a scientific-evidence review process (somewhat similar to that established by Public Law 98–542 and replacing that review process as to Agent–Orange–exposure–related claims) for the establishment, effective 90 days after VA receives the first report which the new law requires the National Academy of Sciences to submit not later than August 6, 1992, of presumptions of service connection for diseases associated with exposure to certain herbicide agents. 38 U.S.C.A. § 1116 (West 1991).

**9.** *See also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982); *Morton v. Mancari,* 417 U.S. 535, 549–50, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *Posadas v. National City Bank of New York,* 296 U.S. 497, 503–04, 56 S.Ct. 349, 352–53, 80 L.Ed. 351 (1936).

**10.** *See also Ruckelshaus v. Monsanto,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *Morton, supra* note 9; *Lorenzano v. Brown,* 4 Vet.App. 446, 449 (1993) (Court re-

Applying the foregoing principles compels the conclusion that there is no "irreconcilable conflict" between the 1984 Act, on the one hand, and Code sections 310 and 354(a), on the other. Rather, the 1984 Act can most comfortably be read as requiring VA to identify certain conditions which generally may be caused by radiation exposure, as a means of assisting veterans seeking to establish service connection for such conditions, but not as precluding a claimant's right under sections 310 and 354(a) otherwise to establish independently service connection for a disease on the basis of evidence showing that the veteran's *particular* disease was incurred as the result of his or her *particular* radiation exposure in service. Such a harmonious construction is clearly required by the fundamental principles of statutory construction noted above. As set forth in part II.B., *infra,* that construction also is the better of two possible interpretations of the statute read as a whole.

### B. Plain Meaning of 1984 Act

Section 5(a)(1) of the 1984 Act generally requires the Administrator of Veterans Affairs (Administrator) (now the Secretary of Veterans Affairs) to prescribe regulations "for the resolution of claims for benefits under laws administered by [VA] where the criteria for eligibility for a benefit include a requirement that a death or disability be service connected and service connection is based on a veteran's exposure during service" to certain nuclear-detonation radiation[11] or dioxin. Section 5(b)(1)(A) of the 1984 Act specifies that these regulations "shall *include* guidelines covering the evaluation of ... [scientific] studies" (emphasis added). Subsections (b) and (c) of section 5 of the 1984 Act set up a process by which scientific studies were to be evaluated by

the Veterans' Advisory Committee on Environmental Hazards (Advisory Committee), which would then make non-binding recommendations to the then Administrator as to "the possible increased risk of adverse health effects of [such] exposure" and the Administrator would then determine, through the regulatory process, whether generally "service connection shall be granted ... in the adjudication of individual cases" for certain diseases on the basis of "sound scientific or medical evidence indicating ... a connection to exposure to ionizing radiation" in the case of veterans who participated in service in atmospheric nuclear tests or the American occupation of Hiroshima or Nagasaki. 98 Stat. at 2727–28.

The 1984 Act's use of "include" in subsection (b)(1)(A) signifies that there is no requirement that the *only* guidelines to be "include[d]" in the general radiation- and dioxin-exposure regulations are those based on the scientific-study evaluations by the Advisory Committee. Guidelines for individual adjudications not based on those evaluations are obviously permissible. Hence, I disagree with the Court's conclusion as to the reasonableness of VA's interpretation that such regulations are to specify an "exclusive" list of the diseases which may be determined to be service connected based on such exposure. *Combee,* 4 Vet. App. at 94.

Furthermore, as noted above, Code section 354(a) required in 1984 that the Secretary's "regulations pertaining to service-connection" include "provisions" for a case-by-case claims-adjudication process which is to afford to *each* veteran the opportunity to gain service connection on the basis of *that veteran's* "places, types, and circum-

---

quired to construe all parts of statute in conjunction to "produce a harmonious whole"); *Spencer v. Brown,* 4 Vet.App. 283, 296 (1993) (new enactments must be "taken as intended to fit into the existing [statutory] system and to be carried into effect conformably to it, excepting as a different purpose is clearly shown") (quoting *United States v. Jefferson Electric Co.,* 291 U.S. 386, 396, 54 S.Ct. 443, 447, 78 L.Ed. 859 (1934)); *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992) (same).

**11.** Section 5(a)(1)(B) of the 1984 Act instructs the Secretary to prescribe such regulations as to nuclear-detonation radiation exposure where such exposure occurred "in connection with such veteran's participation in atmospheric nuclear tests or with the American occupation of Hiroshima or Nagasaki, Japan, prior to July 1, 1946". The 1984 Act does not, by its terms, apply to any other kind of radiation exposure. *But cf.* part II.E., *infra.*

stances of ... service", military records, and medical records *"and all pertinent medical and lay evidence"*. 38 U.S.C. § 354(a) (emphasis added). It was this very Code provision which Congress amended in 1984 to *add* a direction to the Secretary to include in the basic service-connection regulations the "provisions required by section 5" of the 1984 Act. *Ibid.* There is not a hint in the law or legislative history that the 1984 Act "provisions" were intended to limit, let alone supersede, those Code "provisions" in any manner. The Code "provisions" require adjudication to be carried out on the basis of individual case circumstances in light of all pertinent medical evidence. Indeed, as to the "provisions" in the 1984 Act, Congress went out of its way to require in section 5(a)(2) that the radiation-exposure service-connection regulations must "ensure" that the benefit-of-the-doubt doctrine is "carried out" in the adjudication of individual radiation-exposure claims. 98 Stat. at 2727.

Finally, it is noteworthy that the Supreme Court has recently stated that "statutory provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor", although I do not believe that application of such a presumption is necessary to construing the statutory provisions correctly. *King v. St. Vincent's Hospital*, —— U.S. ——, —— n. 9, 112 S.Ct. 570, 574 n. 9, 116 L.Ed.2d 578 (1991).

### C.  Legislative History of 1984 Act

No legislative history is cited, and I believe none exists, to show that by the enactment of the 1984 Act Congress intended to *take away* rights—let alone the fundamental right to case-by-case adjudication of claims for service-connected compensation. Indeed, all the legislative history points in the other direction—to an intent by Congress to expand rather than restrict veterans' rights.[12] The legislative history demonstrates clearly that Congress was dissatisfied with the low number of nuclear-detonation radiation claims that VA had *allowed*—between one and three percent of such claims. *See, e.g.*, S.Rep. No. 100–215, 100th Cong., 1st Sess., 102–03 (1987)[13]. It

---

**12.** The appellant places great, but unfounded, reliance on language in the joint explanatory statement accompanying the final version of the 1984 Act, in which it was stated:

> The Senate amendment (section 5(b)(2)(A)(iv)) would require the Administrator, in *adjudicating claims based on exposure to ionizing radiation in Hiroshima or Nagasaki, Japan,* following World War II and involving diseases not specified in the Senate amendment, to ensure that careful and deliberate consideration is given to the contention that a *connection between the disease and such exposure exists.*
>
> The compromise does not contain this provision.
>
> Proposed: In not including this provision, the Committees note that it is their intention that such consideration would be given to *these* and all other such claims.

130 Cong.Rec. H11162 (1984) (emphasis added). This seems to be a rather straightforward, and certainly highly authoritative explanation by the Congressional authorizing committees that "in adjudicating [certain] claims based on exposure to ionizing radiation ... and involving diseases not specified", "careful and deliberate consideration" would be given to "the contention that a connection between the disease and such exposure exists". *See Matter of Smith,* 1 Vet.App. 492, 506–07 (1991) (Steinberg, J., concurring) (pointing out the "highly authoritative" nature

of the "bicamerally produced and referenced explanatory statement"). The Secretary's attempt to explain away this legislative history as relating to the Secretary's promulgation of a "list of radiogenic diseases for which service connection may be established" rather than case-by-case adjudication is unavailing. Secretary's Response to Motion for Review En Banc, at 2 (Mar. 5, 1993). However, this legislative history and the Senate-passed provision from which it was derived are focused specifically on claims based on the radiation exposure of veterans while part of the *Hiroshima or Nagasaki, Japan, occupation force,* and not on claims based on radiation exposure during participation in "atmospheric nuclear tests", such as those in which the appellant in the instant case participated. *See* 130 Cong.Rec. S6175 (1984) (text of section 5(b)(2)(A)(iv) in Senate amendment to H.R.1961 as passed by the Senate on May 24, 1984). The reference to "other such claims" in the concluding sentence of the joint statement commentary is too vague to provide a basis for attaching significance to this item of legislative history insofar as the issue presented by the *Combee* facts is concerned.

**13.** The Senate Committee on Veterans' Affairs stated: "[T]he present claims adjudication process ... has often prevented fair consideration of [radiation-exposure] claims.... The Committee bill [establishing presumptions of service connection] addresses the two key problems

seems a great stretch to conclude that Congress was enacting a law to **deny** radiation-exposed veterans, as well as Agent–Orange–exposed veterans, the opportunity to marshal their own medical and scientific evidence to prove a claim (by showing that their exposure during service began the disease process which was manifested many years later)—probably as fundamental a right as exists in VA claims adjudication—and did so without a hint that it was making such a fundamental change.

The reason there is no such legislative history is, of course, that Congress intended no such restriction. As noted, the totality of the legislative history suggests that the 1984 Act was designed to be a liberalizing, not a restrictive, statute. In *Morton v. Mancari*, 417 U.S. 535, 548, 94 S.Ct. 2474, 2481, 41 L.Ed.2d 290 (1974), where Congress, in enacting a statute, had expressed an intent to grant certain statutory rights to a certain class of persons, the Supreme Court held that it would be "anomalous" to conclude that Congress thereby intended to repeal other previously established statutory rights of that same group. It certainly cannot be said that the legislative history of the 1984 Act reveals a "clear and manifest" intent (such as the Supreme Court said in *Posadas*, 296 U.S. at 503, 56 S.Ct. at 352, would be required in order to work an implied repealer of such statutory rights) to deprive radiation-exposed veterans of the rights that had already been granted to them by Code sections 310 and 354(a).

### D. Effect of the 1988 Act

The Court's conclusion that VA was "reasonable" in concluding that the 1984 Act provided for establishment of an **exclusive** list of designated radiogenic diseases, as the **exclusive** means for proving service connection for such diseases, is further drawn into question by the enactment in 1988 of an amendment to then section 312 of title 38 in the Radiation–Exposed Veterans Compensation Act of 1988, Pub.L. No. 100–321, 102 Stat. 485 (1988) (1988 Act). That law added to Code section 312 a subsection (c) listing 13 diseases (most of which were then also listed in VA's regulation under the 1984 Act, 38 C.F.R. § 3.311b(b)(2)(i) (1987)) presumed to be service connected if manifested in a radiation-exposed veteran to a degree of 10% or more within 40 years (30 years in the case of leukemia) after separation from service.[14]

The introductory clause of subsection (c) as added by the 1988 Act stated that the presumptions there provided as to radiation-related diseases were "subject to the provisions of section 313 of this title [38]". 38 U.S.C. § 312(c) (1988). Subsection (a) of Code section 313, at the time of the enactment of the 1988 Act provided (and continues to provide) that the section 312 presumptions of service connection are subject to rebuttal by "affirmative evidence to the contrary" or evidence of an "intercurrent injury or disease which is a recognized

which have resulted in the denial of *over 99 percent* of all claims for VA benefits filed by radiation-exposed veterans...." S.Rep. No. 100–215, 100th Cong., 1st Sess., 102–03 (1987); *see also* 130 Cong.Rec. S13597 (Oct. 4, 1984) (remarks of Sen. Cranston pointing out the VA's "disappointing track record" in awarding dioxin- and radiation-exposure claims, having awarded only 30 nuclear-detonation radiation-exposure claims to that point); 130 Cong.Rec. S6145, S6147 (May 22, 1984) (remarks of Sen. Cranston pointing out that "few claims were [previously] granted at all on the basis of [such] exposure to ionizing radiation" and that "97 percent of all nuclear test-related [claims] for malignancies have been denied").

**14.** In 1992, Congress repealed both the 10% manifestation requirement and the 30- and 40-year ceilings, as well as adding two new pre-

sumptive diseases—cancer of the salivary gland and cancer of the urinary tract—to bring the list to 15. Veterans' Radiation Exposure Amendments of 1992, Pub.L. No. 102–578, § 2, 106 Stat. 4774. Of the 15 presumptive diseases specified in the statute, four (cancer of the pharynx, of the small intestine, of the bile ducts, and of the gall bladder) are not listed in VA's regulation at § 3.311b(b)(2) (1992). (Another presumptive disease specified in the statute—cancer of the urinary tract—is not specifically listed in section 3.311b, but that regulation does list cancer of two major organs of the urinary tract—the urinary bladder and the kidneys.) Also, six diseases (cancer of the lung, of the bone, of the skin, and of the colon, posterior subcapsular cataracts, and nonmalignant thyroid disease) are specified in the regulation as radiogenic diseases but are not listed in the statute as presumptively service connected.

cause" of the disease for which service connection was sought. Subsection (b) of section 313 then provided and now provides:

> Nothing in section 312 of this title or subsection (a) of this section shall be construed to prevent the granting of service connection for *any disease or disorder* otherwise shown by sound judgment to have been incurred in or aggravated by active military, naval, or air service.

38 U.S.C. § 313(b) (1982) (redesignated § 1113(b) (West 1991)). (Emphasis added.) [15]

Hence, the plain language of Code sections 312(c) and 313(b) provides that the statutory establishment of presumptive service connection for those radiation-related diseases specifically identified by Congress does not preclude a veteran from otherwise proving independently that he or she currently suffers from a particular disease that was incurred or aggravated as the result of particular radiation exposure in service. In enacting these provisions in 1988, Congress explicitly resolved as to the *statutory* list it was then creating of presumptive diseases the same issue presented

to the Court in *Combee* as to the meaning of the *regulatory* list of radiogenic diseases established by the Administrator pursuant to the 1984 Act.

During the process of resolving that issue by providing that the 1988 Act's statutory presumptions were not exclusive, nowhere do the Committee reports or Congressional floor debates on the legislation that became the 1988 Act make any reference to the 1984 Act regulations having an exclusive nature.[16]

Most tellingly, I believe, in enacting Public Law 100–321, Congress expressly rejected as "not ... necessary" a proposed Senate provision which would have provided:

> Nothing in this Act shall in any way operate or be construed to prevent the granting of service connection under chapter 11 or 13 of title 38, United States Code, in the case of *any disease or disability* from which a radiation-exposed veteran suffers or has died, including those disabilities described in this Act, *otherwise determined through the exercise of sound judgment to have been incurred or aggravated by active military, naval, or air service,* including such vet-

---

**15.** The VA regulation at issue in this case, 38 C.F.R. § 3.311b(h), discussed in part III., *infra,* uses very similar language in referring to the regulations prescribed to implement the 1984 Act.

**16.** *See* H.R.Rep. No. 100–235, 100th Cong., 1st Sess. (1987) (to accompany H.R. 1811); S.Rep. No. 100–215, 100th Cong., 1st Sess., 91–110 (1987) (title II of which contained the Senate counterpart legislation to H.R. 1811, as derived from S. 1002); 133 Cong.Rec. H21305–10 (July 28, 1987) (debate on H.R. 1811); 134 Cong.Rec. S8580–8601 (Apr. 25, 1988) (Senate debate on H.R. 1811); 134 Cong.Rec. H9625–32 (May 2, 1988) (debate on H.R. 1811).

Had Congress designed the 1984 Act to establish an exclusive claims-adjudication process for such ionizing-radiation claims, Congress could have intended to leave that process in place for those diseases *not* granted a statutory service-connection presumption in the 1988 Act. However, the legislative history makes any such conclusion highly unlikely.

First, Congress was specifically focused on and, indeed, directly amended—for a purpose not here relevant—the 1984 Act at the time it enacted the 1988 Act. (In section 2(c) of the 1988 Act, Congress specifically amended section

6(d)(3) of the 1984 Act to require that the Committees on Veterans' Affairs also be sent copies of the periodic scientific-study evaluation reports submitted by the Advisory Committee to the Administrator (now Secretary) of Veterans Affairs. Pub.L. No. 100–321, § 2(c), 102 Stat. 485, 486 (1988).) Yet, other than in that unrelated amendment, the 1988 Act made no reference to the 1984 Act.

Also, although VA was in close communication with the two Veterans' Affairs Committees over the year-long period of consideration of the legislation that became the 1988 Act, there is no indication that the agency (or successor department) ever called to the Committees' attention the 1987 VA General Counsel's undigested opinion that the 1984 Act process was an exclusive one. *See Combee,* 4 Vet.App. at 89. Indeed, in a June 25, 1987, letter to the House Committee Chairman, opposing the enactment of the legislation which became the 1988 Act, the Administrator made three separate references to the regulations VA had promulgated under the 1984 Act but did not tell the Congress that these regulations had been construed by VA's General Counsel as the exclusive route for adjudication of service connection for the radiation-exposure claims to which the 1984 Act applied. *See* H.R.Rep. No. 100–235, 100th Cong. 1st Sess. 8, 9, 12 (1987).

eran's participation in the United States Government's nuclear weapons testing program or in the American occupation of Hiroshima or Nagasaki, Japan, prior to July 1, 1946.[17]

In the joint explanatory statement on H.R. 1811, which, incorporating certain provisions from title II of the Senate-passed S. 9, was enacted as Public Law 100–321, the Committees on Veterans' Affairs said of the above-quoted Senate-proposed provision:

The Committees do not consider this provision to be necessary because the provision[s] of the compromise agreement would not on their face preclude or restrict, and are not intended to preclude or restrict, *the right of claimants to apply for and receive benefits under current law*—that is, on a nonpresumptive basis—including any right to have benefits paid retroactively.[18]

In the context of this legislative history, the reference in the joint explanatory statement to "the right of [a] claimant[ ] to apply for and receive benefits under current law" must be read as referring to the right to have a disease or disability, in the words of the Senate-passed provision, "determined through the exercise of sound judgment to have been incurred or aggravated by active military, naval, or air service". This latter standard is not descriptive of the 1984 Act adjudication process established in VA regulation § 3.311b; rather, it derives from the generally applicable basic entitlement language in Code section 310 and tracks word-for-word the language of Code section 313(b), quoted above, that was made directly applicable by the 1988 Act to these types of claims. Application of that general adjudication standard to claims based on exposure to nuclear-detonation radiation would have been inconsistent with a view that the 1984 Act had established an exclusive process for adjudicating such claims. The above legislative history suggests that Congress in 1988 viewed nuclear-detonation radiation claims as being entitled to at least as much individualized consideration as any other claim for service connection. Hence, the reference in the joint statement to the continued viability of rights under "current law" may not properly be read as a reference only to rights under the 1984 Act adjudication regulations, but rather must refer to the continued viability of basic adjudication rights as then (and now) existing under Code sections 310 and 354(a) and other Code provisions *as well as* under the 1984 Act regulations.

At the very least, it must thus be concluded that when Congress specifically addressed in 1988 the non-exclusive effect of the *statutory* list of presumptive diseases it did not at that time make any mention (1) that such a rule was, as the Secretary asserts, not then applicable to the Secretary's *regulatory* list (§ 3.311b(b)(2)) of radiogenic diseases which had been called for in the 1984 Act; or (2) indeed, that section 313(b)'s non-exclusivity proviso would have effect, as to adjudication of radiation-exposure claims for diseases not statutorily presumed to be service connected, *only* as provided in the Secretary's regulations under the 1984 Act. Furthermore, that Congressional silence, as well as the omission of the proposed Senate (section 206) provision as "not ... necessary", in 1988 is strong indication that Congress did not then construe the 1984 Act as having established any exclusivity for the list that the Secretary had been required by the 1984 Act to establish and had in fact by then established in regulation § 3.311b.

At the very most, this 1988 legislative history may be read as indicating that even if Congress had in the 1984 Act somehow by implication limited the effect of Code sections 310 and 354(a), the 1988 Act reinstated the full operation of those provisions insofar as radiation-exposure claims were concerned.

---

17. S.Rep. No. 100–215, 100th Cong., 1st Sess. 21, 103 (1987) (section 206 of proposed S. 9) (emphasis added).

18. 134 Cong.Rec. S8586 (Apr. 25, 1988); 134 Cong.Rec. H9627 (May 2, 1988) (emphasis added).

### E. Scope of the 1984 Act and of Regulation § 3.311b(a)(2)(iii)

There is a further serious flaw in the Court's opinion. Both the Secretary's interpretation of regulation § 3.311b as having established, pursuant to the 1984 Act, an exclusive process for adjudicating *all* claims for service connection based on radiation exposure, and this Court's *Combee* holding deferring to the Secretary's view as a "reasonable" interpretation of the 1984 Act and of § 3.311b are inconsistent with the express scope of the 1984 Act and erroneously apply that exclusivity holding to claims which are clearly beyond the plain language of that Act.

Section 5(a)(1)(B) of the 1984 Act directed the then Administrator to establish guidelines for adjudicating claims based on radiation exposure resulting from the "veteran's participation in atmospheric nuclear tests or ... the American occupation of Hiroshima or Nagasaki, Japan, prior to July 1, 1946". Pub.L. No. 98–542, § 5(a)(1)(B), 98 Stat. at 2727. However, § 3.311b, which VA prescribed in 1985 to carry out the 1984 Act, expressly establishes an adjudication process applicable to claims based on both of those types of exposure *as well as* to "all other claims involving radiation exposure". 38 C.F.R. § 3.311b(a)(2)(iii) (1992). The Department has inexplicably described the regulatory provision as to "all other [radiation] claims" as having been "adopted by VA under the authority of [the 1984 Act]" [19].

In deferring to VA's interpretation, the Court in *Combee* held that the 1984 Act established an exclusive process for adjudicating claims based on *any* type of radiation exposure, rather than just the two types of radiation to which the Act, by its express terms in section 5(a)(1)(B), applied. The Court stated:

> Accordingly, the Court defers to the agency's reasonable interpretation that a veteran may not establish direct service connection, based solely on *radiation exposure,* if the veteran's disability is not one of the enumerated "radiogenic diseases" under 38 C.F.R. § 3.311b(b)(2), and that the provisions of 38 C.F.R. §§ 3.303(d), 3.311b(h) do not afford an alternative basis for establishing direct service connection for a disease on the basis that the disease is *the product of exposure to ionizing radiation.*

*Combee,* 4 Vet.App. at 94 (emphasis added).

However, neither the 1984 Act nor any other law provided express authority for VA's establishment of special regulatory procedures for adjudicating claims based on exposure to radiation in any circumstance other than participation in atmospheric nuclear testing or participation in the occupation of Hiroshima or Nagasaki. Moreover, there is no indication anywhere in the 1984 Act's legislative history that it was intended to be applicable to any other types of exposure [20] (indeed, Congress in 1992, for the first time, specifically addressed the Act's possible applicability to such other types of in-service exposure [21]). Hence, any VA regulations establishing a process—let alone *the* process—for adjudication of "all other claims based on radia-

---

**19.** S.Rep. No. 139, 102d Cong., 1st Sess. 30 (1991), *reprinted in* 1992 U.S.C.C.A.N. 4057, 4088 (June 12, 1991, testimony of VA Deputy Secretary).

**20.** *See* H.R.Rep. No. 98–592, 98th Cong., 2d Sess. (1984) (to accompany H.R.1961), *reprinted in* 1984 U.S.C.C.A.N. 4449; 1984 U.S.C.A.A.N. 4470 (joint explanatory statement of House and Senate Veterans' Affairs Committees); 130 Cong. Rec. S29941–65 (Oct. 4, 1984) (Senate debate on H.R.1961); 130 Cong.Rec. S13147–81 (May 22, 1984) (debate on S. 1651); 130 Cong.Rec. H29544–57 (Oct. 3, 1984) (debate on H.R.1961); 130 Cong.Rec. H736–52 (Jan. 30, 1984) (same).

**21.** Section 3 of the 1992 Act added to the 1984 Act a new section 10 requiring the Advisory Committee, pursuant to review of scientific studies, to prepare a report to the Secretary concerning the feasibility and appropriateness of further investigation "to determine whether activities (other than the tests or occupation activities referred to in section 5(a)(1)(B) [of the 1984 Act] ) resulted in the exposure of veterans to ionizing radiation during the service of such veterans that occurred before January 1, 1970, and whether adverse health effects have been observed or may have resulted from such exposure in a significant number of such veterans." Veterans' Radiation Exposure Amendments of 1992, Pub.L. No. 102–578, § 3, 106 Stat. 4774, 4774–75.

tion exposure" must be consistent with the general claims-adjudication provisions of Code sections 310 and 354(a). *See* 38 U.S.C.A. § 501(a) (West 1991) (VA has authority to prescribe regulations that are "consistent with" the laws administered by VA). Certainly, making the § 3.311b adjudication process applicable to such other radiation claims would be "consistent" with those provisions only as long as a claimant still had recourse to VA's basic claims process if the § 3.311b process proved unavailing in a particular case. Therefore, for the same reasons stated in part II.A., *supra,* applying the Secretary's interpretation that § 3.311b established an *exclusive* process for adjudicating claims based on types of radiation exposure other than the nuclear-detonation exposure specified in section 5 of the 1984 Act would surely not be consistent with Code sections 310 and 354(a).

In summary, as to such "other claims based on radiaticn exposure", the provisions of § 3.311b can be viewed neither as prescribed "pursuant to" the 1984 Act, as VA has incorrectly asserted (in the Deputy Secretary's June 12, 1991, testimony (quoted *supra* in text at note 19)) that they were, nor as establishing for such claims an exclusive adjudication process that would deny to a VA claimant the opportunity to prove independently, by producing medical and scientific evidence, his or her claim based on such "other ... radiation exposure". Accordingly, the VA regulation (amending § 3.311b(h) and quoted in

part IV., *infra* ) issued effective March 26, 1993, to codify VA's exclusivity interpretation is clearly defective as to those "other claims" described by § 3.311b(a)(2)(iii). And VA's interpretation of the 1984 Act as establishing an exclusive adjudication process for claims based on such *other* types of radiation exposure is not a "reasonable"—let alone a permissible—one. To the extent that the Court in *Combee* concluded that the 1984 Act established an exclusive process with respect to such claims, that conclusion is erroneous dictum that is inconsistent with the plain language of the 1984 Act.

### III. Interpreting VA's Regulations

I agree that the Secretary's interpretation of his own *regulation* is generally entitled to substantial deference, and, if reasonable, should generally be followed. *See Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991) ("it is well established that an agency's interpretation of its own regulation is entitled to substantial deference"). However, in this case, VA's interpretation of the regulations at issue is inherently unreasonable and thus entitled to no deference. (Although not essential to the disposition of this case, there is a substantial question as to whether the Court's opinion correctly states the standard for judicial review of whether an agency's regulation is authorized by statute.[22])

**22.** On the basis of its reading of certain Supreme Court cases, the *Combee* Court, having concluded that "the pertinent statutes and regulations are not clear from their plain language", states the ultimate issue before the Court as "whether the administrative agency's interpretation is 'reasonable,' i.e., whether it 'sensibly conforms to the purpose and wording of the regulations,' through an examination of applicable legislative history." *Combee,* 4 Vet.App. at 92–93. I believe that this statement of the issue may not be correct. The ensuing material in this footnote reflects my views only and not those of Judge Kramer, who believes that addressing this issue is not essential to the disposition of this case. I agree with him in that regard, but want to express my views on the "deference" question.

In this case, I believe the issue for the Court to decide is: Is VA's interpretation of its regulation authorized by the statute? *See* discussion

in part II.E, *supra.* In other words, I believe the task for this Court is to decide a question of statutory construction, not to review *the Department's* interpretation of the statute. The panel's approach relegates the Court to the role of reviewer of precedent opinions of VA's General Counsel unless the statute is absolutely clear on its face. I do not think that is what 38 U.S.C.A. § 7261(a)(1) means when it directs the Court to "decide all questions of law [and] interpret ... statutory provisions".

Rather, in determining whether a regulation is authorized by statute, the first question is whether the statute is clear on its face; if so, and if the regulation (and its fair interpretation) conflicts with it, as in *Gardner v. Derwinski,* 1 Vet.App. 584, 588 (1991), that ends the inquiry and the regulation falls. (About that much, there seems to be no disagreement.) If the statutory provision in question is not clear, then recourse to the entire statutory context is neces-

sary, with a view toward harmonizing all pertinent parts of the statute. *See Lorenzano, supra* note 10; *Spencer, ·supra* note 10; *Talley, supra* note 10; SUTHERLAND STAT. CONST. § 46.05 (5th ed. 1992). If that does not resolve the matter, legislative history should be examined. In a case involving benefits for veterans, the Supreme Court has very recently reaffirmed the legitimacy and importance of examining legislative history to divine "the intentions of legislators". In an unusual footnote in which all but two Justices joined, the Supreme Court stated:

A jurisprudence that confines a court's inquiry to the "law as it is passed," and is wholly unconcerned about "the intentions of legislators," *post* at 1567, would enforce an unambiguous statutory text even when it produces manifestly unintended and profoundly unwise consequences. Respondent has argued that this is such a case. We disagree. JUSTICE SCALIA, however, is apparently willing to assume that this is such a case, but would nevertheless conclude that we have a duty to enforce the statute as written even if fully convinced that every Member of the enacting Congress, as well as the President who signed the Act, intended a different result. Again, we disagree. *See Wisconsin Public Intervenor v. Mortier,* 501 U.S. ——, ——, n. 4, 111 S.Ct. 2476, 2484–2485, 115 L.Ed.2d 532 (1991).

*Conroy v. Aniskoff,* —— U.S. ——, —— n. 12, 113 S.Ct. 1562, 1567 n. 12, 123 L.Ed.2d 229 (1993); *see also Matter of Smith, supra* note 12 (concurring opinion of Steinberg, J.).

Only as a last resort should the Court look to the administering agency's interpretation of an otherwise ambiguous statute for whatever persuasive power that interpretation may have. *See Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981) (*FEC*). In *FEC,* oft cited in the Court's *Combee* decision, the Supreme Court implicitly disapproved of the decision of the Court of Appeals to address "first" the question of deference to the Commission's interpretation of the statute; the Court said that the "decision and conclusion that little or no deference was due the Commission were pointless if the [lower] court was correct that the agency agreements violated the plain language of the Act as well as the statutory purposes revealed by its legislative history.... Accordingly, the crucial issue at the outset is whether the Court of Appeals correctly construed the Act." 454 U.S. at 31–32, 102 S.Ct. at 41–42.

Although the Court in *Combee* does not cite *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), many commentators credit the Supreme Court's opinion in *Chevron* as the basic source for the doctrine of judicial deference to an administrative agency's interpretation of the law it is charged with administering. *See, e.g.,* John F. Belcaster, *The D.C. Circuit's Use of the Chevron Test: Constructing a Positive Theory of Judicial Obedience and Disobedience,* 44 Admin.L.Rev. 745, 750 n. 31 (1992), and articles cited therein. Yet, the *Chevron* doctrine has been followed only sporadically by ensuing Supreme Court decisions, especially in the last five years. This point is made most tellingly in a comprehensive and insightful law review article by Professor Thomas W. Merrill, whose service as Deputy Solicitor General of the United States from 1987 to 1990 provided him with an extraordinary vantage point from which to observe this process.

On the basis of an analysis of all decisions of the Supreme Court between 1984 and 1990, Professor Merrill, drawing from *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988), concludes as to the Supreme Court's own actions:

[T]he "plain meaning" inquiry has tended in practice to devolve into an inquiry about whether the statute as a whole generates a *clearly preferred* meaning [citing 3 cases, *Dole v. United Steelworkers,* 494 U.S. 26, 34–43, 110 S.Ct. 929, 933–938, 108 L.Ed.2d 23 (1990); *Sullivan v. Zebley,* 493 U.S. 521, 528–41, 110 S.Ct. 885, 890–97, 107 L.Ed.2d 967 (1990); and *Public Employees Retirement Sys. v. Betts,* 492 U.S. 158, 175–81, 109 S.Ct. 2854, 2865–68, 106 L.Ed.2d 134 (1989) ].... The movement from "specific intention" to "plain meaning" to "plain meaning considering the design of the statute as a whole" is but one step away from "best meaning".

Thomas W. Merrill, *Judicial Deference to Executive Precedent,* 101 Yale L.J. 969, 991 (1992) (quoting from *K Mart,* 486 U.S. at 291, 108 S.Ct. at 1817). The "best meaning" Professor Merrill is referring to is a court's conclusion as to the statutory intent.

Professor Merrill states further in support of this best-meaning analysis: "In *K Mart,* for example, Justice Kennedy's opinion [the opinion of the Court on this point] stated that in ascertaining whether there is a plain meaning, 'the Court must look to the particular statutory language at issue, as well as the language *and design of the statute as a whole.*'" *Ibid.*

In my view, the amount of deference to be paid by the Court to an agency view in determining the validity of that agency's regulation should flow largely from whether that interpretation was one of long standing and whether the Congress was made aware of the agency's statutory interpretation and, by some legislative action contemporaneous with that knowledge, can be said to have acquiesced in it. *See* Merrill, *supra,* at 972–75, 1016–17. None of those factors is present here. Another relevant factor is whether the interpretation is made by an executive agency with particular expertise and is made pursuant to a specific delegation of authority to "interpret a specific statutory term or fill in a statutory gap." *Id.* at 973 (citing cases at n. 4). Clearly, both of these factors are present as to the role of the Secretary in promulgating regulations under Public Law 98–542.

The regulations in effect when *Combee* was decided, 38 C.F.R. § 3.311b (1992), specifically address the very question before the Court. Paragraph (h) then provided:

> (h) *Service connection otherwise established.* Nothing in this section will be construed to prevent the establishment of service connection for any injury or disease otherwise shown by sound scientific or medical evidence to have been incurred or aggravated during active service.

There is no question that this regulation on its face does not say what VA ascribes to it. On its face, it completely supports Mr. Combee's position. Paragraph (h) is totally silent as to its non-applicability to attempts to substantiate service connection on a *radiation-exposure basis* by submitting independent evidence in a particular case. There are two very cogent reasons why the regulation will not bear VA's strained exclusivity interpretation. First, regulation § 3.311b must be read in the context of

---

As to interpretation of agency regulations, see part III., *infra.*

As to the interpretation of the 1984 Act, I find no reference in the legislative history recited in the panel opinion to any Congressional knowledge of VA's interpretation of that Act. Nor do I find any such reference in the history of the ensuing enactment of either Public Laws 100–321 (1988) or 102–578 (1992), which together established open-ended rebuttable presumptions of service connection for 15 stated diseases in "radiation-exposed" veterans. Radiation-Exposed Veterans Compensation Act of 1988, Pub.L. No. 100–321, 102 Stat. 485; Veterans' Radiation Exposure Amendments of 1992, Pub.L. No. 102–578, 106 Stat. 4774. As noted in part II.D., *supra,* VA did not tell Congress about VA's exclusivity interpretation when Congress was considering the legislation which became the 1988 Act or the legislation which became the 1992 Act. As to the 1988 Act, see note 14, *supra.* As to the 1992 Act, see S.Rep. 139, 102d Cong., 1st Sess. 28 (1991), *reprinted in* 1992 U.S.C.C.A.N. 4057, 4082 (June 12, 1991, testimony of VA Deputy Secretary), and H.R.Rep. No. 757, 102d Cong., 2d Sess., (1992) (November 13, 1991, statement of VA Chief Benefits Director, and June 29, 1992, letter of VA Secretary); 138 Cong.Rec. H7302–01 (Aug. 4, 1992); 137 Cong. Rec. S17144–01 (Nov. 20, 1991).

Indeed, the VA General Counsel's 1987 opinion cited by the Court in *Combee,* 4 Vet.App. at 89, as first articulating the exclusivity interpretation was undigested, meaning that it was basically unpublished; and the published precedent opinion setting forth that interpretation

---

VA's basic claims-adjudication regulations. Second, a reading of § 3.311b alone conclusively establishes that it was never intended to establish an exclusive claims-adjudication process for radiation-exposure claims.

In regulation § 3.303(a), the Secretary has established "Principles relating to service connection". Those principles establish the following "General" proposition: "Service connection ... basically ... means that the facts, shown by evidence, establish that a *particular* injury or disability was incurred coincident with service in the Armed Forces.... This may be accomplished by *affirmatively showing inception ... during service or* through the application of statutory presumptions." 38 C.F.R. § 3.303(a) (1992) (emphasis added). This paragraph goes on to make very clear the case-by-case, particularized nature of the VA claims-adjudication process as to the facts and records of each case, by providing:

> (O.G.C.Prec. 69–90 (July 18, 1990)) was not issued until long after the 1988 law had been enacted and after the legislative process had been initiated, with the introduction of legislation by Senator Cranston on May 1, 1990 (S. 2556 in the 101st Congress), to expand the list beyond the initial 13 diseases prescribed by Public Law 100–321 in 1988.

In the Court's opinion in *Combee,* the discussion of VA's interpretation of "the relevant statutory and regulatory language" is merged into a single issue. 4 Vet.App. at 90–92. Although correctly beginning its analysis with the *FEC* case, *supra,* as to statutory interpretation, 4 Vet. App. at 90, the Court proceeds to construct the administrative deference standard by consistently referring to "interpretation of a statute or regulation", 4 Vet.App. at 91, as though those were the same questions. The Court then relies on *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991), in arriving at its test of determining "whether the administrative agency's interpretation is 'reasonable' ". However, *Martin,* in articulating the "reasonable" interpretation standard, was dealing, to quote from the *Combee* opinion (4 Vet.App. at 91), with " 'the meaning of [regulatory] language' ". With no stated recognition of this, the Court almost imperceptibly slides that "reasonableness" standard into the context of *statutory* construction.

This merger of the two questions is a further shortcoming in the *Combee* opinion. Rather, interpretation of the *statute* and interpretation of the *regulation* should be undertaken as discrete steps.

*Each* disabling condition shown by a veteran's service record, or for which he seeks a service connection must be considered on the basis of the places, types and circumstances of his service as shown by service records, the official history of each organization in which he served, his medical records and *all pertinent medical and lay evidence.* Determinations as to service connection will be based on review of *the entire evidence of record,* with due consideration to the policy of the Department of Veterans Affairs to administer the law under a broad and liberal interpretation consistent with the facts in each individual case.

*Ibid.* (emphasis added).

Paragraph (d) of the same section then provides:

Service connection may be granted for any disease diagnosed after discharge, when *all the evidence,* including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and Department of Veterans Affairs regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.

38 C.F.R. § 3.303(d) (1992) (emphasis added).

Nowhere in these generally applicable basic principles for determining service connection is any cross-reference made to the special-review-process provisions of § 3.311b as to "Claims based on exposure to ionizing radiation". This alone suggests that the two processes are complementary of each other. Moreover, there are absolutely no words of limitation anywhere in § 3.311b to suggest that it supplants the general adjudication principles of § 3.303(a). Indeed paragraph (f) of § 3.311b strongly suggests to the contrary, by providing:

The determination of service connection will be *under the generally applicable provisions of this part,* giving due consideration to *all evidence of record, including* any opinion provided by the Chief Medical Director or an outside consultant, and to the evaluations published pursuant to § 1.17 of this title. With regard to any issue material to consideration of a claim, the [benefit-of-the-doubt] provisions of § 3.102 of this title apply.

38 C.F.R. § 3.311b(f) (1992) (emphasis added).

So, VA's own regulations state that, after the review process carried out under § 3.311b has been completed, the adjudication of the claim will proceed "under the generally applicable provisions", which obviously include § 3.303(a), and that "all evidence of record" will be given "due consideration" and that that evidence of record includes *but is not limited to* "any opinion of the Chief Medical Director" under the special provisions of § 3.311b.

Against this background, not only is the Secretary's interpretation of § 3.311b as preempting the regular adjudication process unreasonable, but it is ridiculous. The same is true of the tortured reading of paragraph (h), which means exactly what it says: That § 3.311b does not in any way prevent a claimant from establishing "service connection ... by sound scientific or medical evidence" without limitation as to the theory of service incurrence. For paragraph (h) to bear the reading the Secretary seeks to impose, it would have to be read as inconsistent with the generally applicable provisions of § 3.303(a) and (d) and their express incorporation by reference through § 3.311b(f). Any such reading would require express words of limitation in either § 3.303 or § 3.311b and perhaps in both, and none exist in either. Indeed, as shown above, quite the contrary is the case. Express words of cross reference exist to illustrate the complementary nature of §§ 3.311b and 3.303.

As the Court said in *Talley v. Derwinski,* 2 Vet.App. 282, 287 (1992):

[W]e must determine how the specific regulations work together in the context of their underlying statutory authority.

Just as a statute should be construed so as to sustain its constitutionality ... [citations omitted], so should regulations be construed so as to harmonize them with the authorizing law.

In *Combee,* the only rational reading of the § 3.303 general and § 3.311b specific regulatory provisions together results in the view that they are fully compatible with each other and that the specific review process for certain radiation-exposure claims established by § 3.311b is an addition to and not a substitute for the general adjudication principles and process provided for in § 3.303.

The second reason why § 3.311b cannot be read as establishing an exclusive claims-adjudication process is contained in that section itself in two respects. First, as discussed in part II.E., *supra,* the scope of § 3.311b covers *all* radiation-exposure compensation claims, not just those based on the two types of nuclear-detonation ionizing radiation specified in the 1984 Act. Yet, as is also made clear in part II.E., *supra,* there is absolutely no statutory authority for VA to make the § 3.311b special-review-process regulations the exclusive way to prevail on the third category of such non–1984–Act radiation exposure ("all other") claims. Since the regulation treats all three categories the same and if paragraph (h) does not permit, as VA contends, independent case-by-case proof that a particular veteran's disability is associated with in-service radiation exposure as to the two categories of exposure specified by the 1984 Act, then paragraph (h) does not liberate the third category either. This conclusion, that VA's interpretation of § 3.311b must make that special-review process exclusive as to the "all other claims" category, provides the clearest evidence that paragraph (h) was never intended to bear and could not bear the twisted reading VA has put forward.

A second reason why § 3.311b, and specifically paragraph (h), on its face will not

bear VA's exclusivity interpretation is that paragraph (h)'s wording parallels the language of the statutory *non*-exclusivity provision in 38 U.S.C.A. § 313(b), quoted in the text at note 15, pertaining to the continued availability of VA's case-by-case claims adjudication process where service connection is not available under a statutory presumption. If VA's interpretation of § 3.311b(h) were correct, the same interpretation would seem applicable to section 313(b) and all of the statutory presumptions to which it applies, such as those for a former prisoner of war (POW). *See* 38 U.S.C.A. § 1112(b) (West 1991). Under such a construction of these words, if a former POW developed a disease after service that was not on the statutory list of 15 diseases presumed by law to be service connected, the veteran would be precluded from attempting to show directly that the inception of the disease came during the veteran's "exposure to" incarceration since that is the subject addressed in the statute just as exposure to ionizing radiation is the subject addressed by § 3.311b. Surely, such a construction of section 313(b) would be preposterous.

## IV. New Regulation

The Secretary has very recently issued a revised regulation to codify his interpretation of the regulations at issue in *Combee* as calling for the Secretary to prescribe an exclusive list of those diseases which may be adjudicated as service connected based on any form of in-service exposure to ionizing radiation. In 58 Fed.Reg. 16358 (Mar. 26, 1993), VA amended 38 C.F.R. § 3.311b(h) to provide, effective March 26, 1993, that "service connection will not be established under this section, or any other section except for [38 C.F.R.] §§ 3.309(d) [15 diseases presumed to be service connected] ..., *on the basis of exposure to ionizing radiation* and the subsequent development of any disease not specified in paragraph (b)(2) of this section" (emphasis added).[23]

23. In the supplementary information accompanying the final issuance of this regulation, VA commented:

> Service connection for disabilities or deaths alleged to be the result of exposure to ionizing radiation which first manifest themselves after the periods specified in [38 C.F.R.]

Under our opinion in *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), VA's new regulation in paragraph (h) of § 3.311b is not applicable to Mr. Combee's situation because it is less "favorable" to him than the current regulation and VA has not provided that the regulation should have retroactive effect.[24] However, in a case in which it were applicable, I conclude, for the reasons fully set forth above, that the revised § 3.311b(h) is inconsistent with the 1984 Act and, at the appropriate time, should be struck down.

### V. Conclusion

For the foregoing reasons, the Court's holding in *Combee* is deficient because the regulation (38 C.F.R. § 3.311b(h)) which VA construed (and now has amended expressly) to preclude service connection being awarded based on exposure to ionizing radiation in the case of any disease not designated as radiogenic by the Secretary (or the Congress) does not so provide and may not reasonably be construed as so providing. And the same is true as to the meaning of the 1984 Act itself. Hence, Mr. Combee should be accorded the right to prove his claim independently by producing

medical and scientific evidence showing that his particular disability had its inception with his particular exposure to nuclear-detonation radiation in the United States Army, and all veterans with such ionizing-radiation-exposure claims should be accorded a comparable right.

---

§ 3.307, however, must be established under the provisions of 38 C.F.R. § 3.311b unless service connection may be established either by applying the presumptions established by Congress in Public Law 100–321 (38 C.F.R. § 3.309(d)), or because the condition is proximately due to or the result of a service-connected disease or injury (38 C.F.R. § 3.310(a)).

By enacting Public Law 98–542, Congress clearly intended to establish an avenue for VA to compensate veterans for disabilities or deaths caused by ionizing radiation exposure, *since existing statutes and regulations had proven inadequate for that purpose.* Just as clearly, 38 C.F.R. § 3.311b(h), which implements the radiation provisions of Public Law 98–542, does not preclude awards of service connection under §§ 3.303, 3.304, 3.306, or 3.307, since it is applied only after service connection under those regulations has already been precluded because a condition has manifested itself beyond the time frames they impose.

58 Fed.Reg. 16358–59 (Mar. 26, 1993) (emphasis added). The quoted language, especially the emphasized material, seems to suggest that until Public Law 98–542 was enacted in 1984 the Department of Veterans Affairs did not have adequate authority to compensate veterans for radiogenic diseases first arising many years af-

ter service and not having manifested themselves in service. To the extent that such a suggestion is intended, it is a curious one. As of October 4, 1984, the Veterans' Administration (the Department's predecessor agency) had awarded compensation (through either service-connected disability compensation or survivors' dependency and indemnity compensation) in 30 nuclear-test-related cases and in at least one case for a condition (soft-tissue sarcoma) arising long after service exposure to dioxin in the herbicide Agent Orange. *See* 130 Cong.Rec. S13597–98 (1984) (remarks of Sen. Cranston). The Department does not cite any legislative proposals ever submitted by the executive branch to provide authority to pay such compensation for radiation-related or dioxin-related diseases arising many years after service. Nor, as far as can be determined, do public records reflect any such executive-branch proposed legislation or, for that matter, any legislation to authorize payment of compensation in cases involving post-traumatic stress disorder arising many years after service where no manifestation of the disease was present in service.

24. *See* 58 Fed.Reg. 16358 (Mar. 26, 1993) (providing that the regulation would be effective as of March 26, 1993, the date of its promulgation).