Lillian S. EARLE, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–1073.

United States Court of Veterans Appeals.

Argued Jan. 11, 1994.

Decided July 8, 1994.

Jonathan M. Coleman, Washington, DC, for appellant.

Mary Ann Flynn, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Judges.

MANKIN, Judge:

Lillian S. Earle (appellant) appeals a May 4, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for the cause of her husband's [hereinafter veteran] death due to ionizing radiation exposure. The appellant claims the BVA failed to execute its duty to assist because it did not assist her to develop her claim that the veteran had been stationed in Nagasaki. The appellant further claims that the Board failed to extend the benefit of the doubt as required by law. The Board found that the evidence demonstrated that the veteran could not be service connected because he was neither presumptively entitled to service connection as a radiation-exposed veteran nor entitled to direct service connection based upon the weight of the medical evidence. However, the Board failed to execute its duty to assist the appellant to develop her well-grounded claim, and failed to assess the credibility and probative weight of the appellant's testimony. Accordingly, the Court will vacate the decision of the Board and remand the matter.

## I. Factual Background

The veteran served on active duty from May 1942 to November 1945. He was in the Japanese occupation force, landing at Sasebo, Japan, on September 23, 1945, and serving in Ainoura, Japan, about thirty miles north of Nagasaki, Japan, until October 12, 1945, when he departed Japan. The veteran was discharged on November 6, 1945.

In July 1952, the veteran died as a result of acute monocytic leukemia. In July 1954, the appellant submitted a claim for service connection, asserting that the cause of the veteran's death should be service connected. The claim was denied the following August because there was no evidentiary support that the veteran's acute monocytic leukemia was incurred in or aggravated by service. In November 1976, the appellant again claimed service connection for the cause of the veteran's death. In her claim, the appellant stated that she believed the veteran had served in a Nagasaki hospital for about three months. In December 1976, the claim was again denied because the appellant had not submitted new and material evidence.

In November 1989, the appellant claimed service connection based upon 38 U.S.C. § 1112(c), regarding presumptive service connection for radiation-related diseases. In January 1990, the appellant requested the VA Regional Office (RO) to obtain the veteran's "service records to satisfy yourself that he was at Nagasaki." The appellant claimed the veteran had served in Nagasaki, or had visited that city while on leave. She also submitted a letter from Rear Admiral Lukas, Assistant Chief for Operational Medical Support, Department of the Navy, which the appellant asserted established her contention that the veteran had served in Nagasaki. In response to this claim, the VA requested information from the Defense Nuclear Agency (DNA) regarding where the veteran might have served in Japan and the recorded levels of his radiation exposure. The DNA reported that the veteran had served no closer to Nagasaki than the Sasebo/Ainoura vicinity, thirty miles north of Nagasaki.

In a January 10, 1990, Statement in Support of Claim, relating to the November 1989 claim, the appellant stated that her claim was based upon 38 C.F.R. § 3.311b(b)(4)(ii). This regulatory provision provides an additional means of establishing service connection for radiogenic diseases and is authorized by 38 U.S.C. § 1154(b) and Pub.L. No. 98–542 (found at 38 U.S.C.A. § 1154 note). However, the VARO failed to address this claim, and, on appeal, the Board remanded this claim to the RO for adjudication.

In accordance with 38 C.F.R. § 3.311b(b)(1), the VA forwarded the appellant's claim to the Chief Medical Director to render an opinion regarding the likelihood that the veteran's leukemia was the result of

in-service exposure to ionizing radiation. The Chief Medical Director's report determined that, using all possible worst case assumptions, the veteran's maximum possible radiation dose in Nagasaki was less than one rem. The report also concluded that, utilizing a worst case scenario, the veteran, at age thirty-three, was afforded a "99 percent credibility that there is no reasonable possibility that it is as likely as not that the veteran's leukemia, appearing within 20 years of exposure is related to his exposure to ionizing radiation." Accordingly, the Chief Benefits Director concluded that the evidence demonstrated no reasonable possibility that the veteran's leukemia had resulted from in-service radiation exposure, and the RO denied the appellant's claim.

On appeal, the BVA concluded in its May 4, 1992, decision that the veteran was not a radiation-exposed veteran, and thus could not be presumptively service connected under 38 U.S.C. § 1112. Furthermore, the BVA concluded, under 38 C.F.R. § 3.311b, that there was no reasonable possibility that the veteran's leukemia resulted from in-service radiation exposure. The present appeal followed in which the appellant confined her appeal to entitlement to presumptive service connection for monocytic leukemia.

## II. Analysis

The appellant contends that the Board erred in finding that the veteran's leukemia was not a service-connected disease. She asserts that had the Board complied with its duty to assist and developed her claim that the veteran had served briefly in a Nagasaki hospital, it would have obtained evidence sufficient to substantiate her claim. The appellant further argues that it was error for the Board to fail to assess the credibility of her testimony that the veteran had served in a Nagasaki hospital. Finally, the appellant contends that the Board failed to give the veteran the benefit of the doubt mandated under 38 U.S.C. § 5107(b).

■ A radiogenic disease may be presumptively service connected if an individual is a radiation-exposed veteran who participated in a radiation-risk activity, and in whom the radiogenic disease became manifest during his lifetime. 38 U.S.C. § 1112(c).

In order to establish presumptive service connection for a radiogenic disease, the VA must find (1) that medical evidence confirms the existence of a radiogenic disease recognized by the governing statute and regulation, 38 U.S.C. § 1112(c)(2)(A)–(O), 38 C.F.R. § 3.309 (1993) (as amended by 59 Fed.Reg. 5106, 5107 (1994)), and (2) that the claimant was a radiation-exposed veteran. A radiation-exposed veteran is defined as "(i) a veteran who, while serving on active duty, participated in a radiation-risk activity, or (ii) an individual who, while a member of a reserve component of the Armed Forces, participated in a radiation-risk activity during a period of active duty for training or inactive duty training." 38 U.S.C. § 1112(c)(3)(A) (formerly 38 U.S.C. § 1112(c)(4)(A)). A radiation-risk activity is defined, *inter alia*, as "[t]he occupation of … Nagasaki, Japan, by United States forces during the period beginning on August 6, 1945, and ending on July 1, 1946." 38 U.S.C. § 1112(c)(3)(B)(ii) (formerly 38 U.S.C. § 1112(c)(4)(B)(ii)). Under authority of 38 U.S.C. §§ 501 and 1112, the VA has promulgated a regulation defining the term occupation of Nagasaki, Japan, by United States forces as

> official military duties within 10 miles of the city limits of … Nagasaki, Japan, which were required to perform or support military occupation functions such as occupation of territory, control of the population, stabilization of the government, demilitarization of the Japanese military, rehabilitation of the infrastructure or deactivation and conversion of war plants or materials.

38 C.F.R. § 3.309(d)(3)(vi) (1993).

In the present case, the record reveals, and the Secretary does not dispute, that the veteran died from acute monocytic leukemia in July 1952. Congress has recognized monocytic leukemia as a radiogenic disease. 38 U.S.C. § 1112(c)(2)(A). However, the record also demonstrates that the DNA determined that the veteran was never any closer to Nagasaki than the Sasebo/Ainoura vicinity, thirty miles north of Nagasaki.

■ The appellant asserts, however, that had the VA performed its duty to assist and

assessed the credibility of her testimony, those actions would have produced evidence sufficient to corroborate her claim that the veteran had served in Nagasaki, at least to the extent that the Board should have addressed the benefit of the doubt. In order to establish presumptive service connection for a radiogenic disease, a claimant must demonstrate the veteran's participation in a radiation-risk activity. 38 U.S.C. § 1112(c)(3)(A)–(B). In order to substantiate a claimant's assertion that the veteran was involved in a radiation-risk activity, the VA's adjudication manual requires that the VA contact the Department of Defense (DOD) and request verification of the claimant's service. DEPARTMENT OF VETERANS AFFAIRS, ADJUDICATION PROCEDURE, Part III, para. 5.11 (Aug. 4, 1992) [hereinafter M21–1 Manual].

> The [DOD] ... has sole responsibility for providing information concerning the veteran's participation in a radiation-risk activity.... [R]equests for on-site participation, occupational force involvement or internment as a POW in Japan ... are to be sent to: Defense Nuclear Agency (DNA).... This information is **NOT** to be requested from any other source. Cases may already contain letters from the [DNA] ... which give sufficient factual data for a favorable decision by a rating board as to the veteran's participation in a radiation-risk activity.... If the letters are in response to a VA request, further development is not required. If the letters were submitted by the claimant, verification from DNA is required.

*Id.* Part III, para. 5.11c(3)(a)–(b) (emphasis in original). Thus, under the M21–1 Manual, the only means by which a claimant's assertion of radiation-risk activity may be substantiated, for presumptive service-connection purposes, is through official DNA documentation. *Id.* Other documentation is not acceptable unless verified by DNA documentation. *Id.*

■ Assuming momentarily that this M21–1 provision was a valid exercise of regulatory authority, we find this M21–1 Manual provision a troubling departure from 38 C.F.R. § 3.303(a) (1993), which permits substantiation of claims through acceptable lay

or medical evidence, and, more generally, all evidence of record. Furthermore, we find this provision unacceptable in light of our holdings that determinations of service connection, generally, are to be evaluated in light of all evidence of record, and not based solely upon an evaluation of medical or official military records. *Zarycki v. Brown,* 6 Vet.App. 91, 97 (1993); *Triplette v. Principi,* 4 Vet.App. 45, 49 (1993); *Cartright v. Derwinski,* 2 Vet.App. 24, 25 (1991); *cf.* 38 C.F.R. § 3.203 (1993) (use of service records to establish "evidence of service"); *Duro v. Derwinski,* 2 Vet.App. 530, 532 (1992). In addition, we find this provision to be invalid under this Court's subsequent holding in *Fugere v. Derwinski,* 1 Vet.App. 103 (1990).

This Court held in *Fugere* that *substantive rules* in the M21–1 Manual have the force of regulation only where they have been adopted pursuant to the notice and comment procedure set out in the Administrative Procedure Act (APA), 5 U.S.C. § 552. *Fugere,* 1 Vet.App. at 107–10; *see also Hayes v. Brown,* 5 Vet.App. 60, 66–67 (1993); *Hamilton v. Derwinski,* 2 Vet.App. 671, 673–75 (1992). In *Fugere,* the Court invalidated an M21–1 provision regarding the awarding of benefits for hearing defects because the provision had not been adopted in accordance with the APA. *Fugere,* 1 Vet.App. at 107. The Court held:

> Paragraph 50.13(b) did not merely clarify or explain an existing rule or statute. It has "the force of law and narrowly limits administrative action" in that it prescribes what action must be taken in the initial levels of adjudication. Paragraph 50.13(b) regulates the awarding of benefits for hearing defects in a particular instance, *i.e.,* when a change in benefits would result *only* from the implementation of a new rating schedule the old criteria *must* be applied. Paragraph 50.13(b) was more than a mere procedural guideline; it affected a substantive right and its placement in a procedural manual cannot disguise its true nature as a substantive rule.

*Id.*

Likewise, we find the instant provision of the M21–1 Manual to be a substantive rule because it "has the force of law and narrowly

limits administrative action." Under paragraph 5.11, only certification obtained from or certified by the DNA may be accepted as proof of participation in a radiation-risk activity. In the context of a claim for presumptive service connection of a radiogenic disease, certification of participation in a radiation-risk activity is the factor which determines service connection. Paragraph 5.11 necessarily limits administrative action because it regulates the awarding of benefits in a particular instance: i.e., where a claimant seeks presumptive service connection for a radiogenic disease where that claimant participated, or claims to have participated, in a radiation-risk activity. Therefore, we find that paragraph 5.11c(3)(a)–(b) of the M21–1 Manual Part III is "more than a mere procedural guideline; it affect[s] a substantive right and its placement in a procedural manual . . . [does not] disguise its true nature as a substantive rule." *Fugere*, 1 Vet.App. at 107.

Since paragraph 5.11 is a substantive rule, both the APA, 5 U.S.C. § 552, and this Court's holding in *Fugere*, 1 Vet.App. at 107–10, require that it be adopted subject to the provision of notice in the *Federal Register* and an opportunity for public comment. However, the provision was not noticed and no opportunity for public comment was provided. It was therefore adopted "without observance of procedure required by law," and will be held "unlawful and set aside." 38 U.S.C. § 7261(a)(3)(D). This holding is consistent with this Court's practice of invalidating, on a case-by-case basis, those substantive provisions of the M21–1 Manual, adverse to an appellant, which have not been adopted in accordance with the APA. *Fugere*, 1 Vet. App. at 110; *see also* 38 C.F.R. § 1.551(c) (1993) (person may not be "adversely affected by any matter required by this section to be published in the FEDERAL REGISTER" that was not so published unless the person has "actual and timely notice" of its terms); *see also Zarycki*, 6 Vet.App. at 97–98 (requiring uniform application of M21–1 provisions favorable to claimant).

The appellant expressly requested the VA to obtain the veteran's service records. Because paragraph 5.11 is not a valid provision, the VA could not rely solely upon the DNA's certification that there was no evidence that the veteran had participated in a radiation-risk activity. Accordingly, the VA had a duty to pursue other possible sources of evidence in fulfillment of its duty to assist the appellant to develop her well-grounded claim. 38 U.S.C. § 5107; *Littke v. Derwinski*, 1 Vet.App. 90 (1990); 38 C.F.R. § 3.159 (1993); 38 C.F.R. § 3.303(a). However, the VA did not indicate that it had pursued any other sources of evidence, such as temporary duty orders directing the veteran to Nagasaki, and the record does not show the extent to which the DNA pursued any other records. Therefore, the Court cannot determine whether the Secretary's duty to assist has been carried out. *See Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991) ("Inherent in the duty-to-assist obligation and the *Gilbert* [*v. Derwinski*, 1 Vet. App. 49, 56–57 (1990) ] explanation mandate is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other."). Furthermore, the VA did not assess the credibility of her testimony that the veteran had served in Nagasaki or address the application of the benefit of the doubt to her case. On remand, the VA will assist the appellant to develop her claim that her husband served in a Nagasaki hospital, and the Board will have an opportunity to assess the credibility of her testimony to that effect, and apply the benefit of the doubt if it finds the evidence to be in relative equipoise. *See Cartright*, 2 Vet.App. at 25–26; *Gilbert*, 1 Vet.App. at 53–56.

### III. Conclusion

Upon consideration of the record, the appellant's brief and reply brief, and the Secretary's brief, the Court holds that para. 5.11c(3)(a)–(b) of the M21–1 Manual Part III was adopted "without observance of procedure required by law" and is therefore "unlawful and set aside." 38 U.S.C. § 7261(a)(3)(D). Consequently, the May 4, 1992, decision of the Board of Veterans' Appeals is VACATED and REMANDED for further development and readjudication consistent with this opinion.