Glenn M. HARDIN, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.

No. 95–61.

United States Court of Veterans Appeals.

Feb. 9, 1998.

Glenn M. Hardin, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Mary Ann Flynn, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

NEBEKER, Chief Judge:

The appellant, Glenn M. Hardin, appeals a September 21, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which, inter alia, denied service connection for chronic pain syndrome, neuropathy, myelopathy, and normochromic anemia, finding that those conditions were not incurred during the veteran's service. Upon consideration of the record on appeal and the briefs of the parties, the Court will vacate the Board's decision and remand the matters for the following reasons.

### I. FACTS

Mr. Hardin served on active duty in the U.S. Air Force from April 1954 to December 1963. Record (R.) at 202, 204. He participated in Operation DOMINIC I as a fuels specialist stationed on Christmas Island in the spring of 1962. R. at 202, 441–43. In a July 1962 letter to Mr. Hardin's commanding officer, Major Mervin K. Jacobs offered the following:

(1) During the 1962 nuclear tests, which were held at Christmas Island, A1C Hardin was assigned to aircraft refueling as a refueling operator.

(2) The mission of the aircraft refueling section was to refuel all mission, MATS and transient aircraft ... to ensure mission success.

(3) During the first two months of operations, personnel and equipment were inadequate to support all refueling requirements in a normal forty hour week. Consequently, personnel were required to work twelve and sometimes sixteen hour shifts, seven days a week, on a continuing basis.

R. at 291. Operation DOMINIC I was a series of 36 atmospheric nuclear weapon detonations held in the Pacific Ocean area from

April to November 1962. R. at 698. DO-MINIC I is recognized by VA as an "operational period" in which onsite participation entitles veterans to presumptive service connection for several specified conditions. 38 U.S.C. § 1112(c); *see also* 38 C.F.R. § 3.309 (1996). "Onsite participation" is defined as "presence at the test site, or performance of official military duties in connection with ships, aircraft or other equipment used in direct support of the nuclear test." 38 C.F.R. § 3.309(d)(3)(iv)(A).

In March 1978, a VA regional office (RO) denied service connection for arthritis (multiple joints) and a skin condition secondary to exposure to atomic radiation. R. at 327. The RO determined that "exposure to atomic radiation [was] not shown," and thus concluded that service connection for any radiation-related condition was not warranted. *Id.*

In July 1984, Mr. Hardin underwent a VA radiation physical examination. R. at 570–80. The examining physician, Dr. Kaufmann, did not have access to the veteran's service records and relied, in part, on the veteran's history. R. at 577–78. On objective examination, Dr. Kaufmann noted that the skin of the veteran's face and head appeared slightly reddened and "showed signs of a dull redness of a type that is associated with chronic actinic deteriorations." R. at 574. (Actinic refers to rays of light beyond the violet end of the spectrum that produce chemical effects, i.e., radiation. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 21 (28th ed.1994).) The physician further included the following comments:

This patient gives a rather clear and, on repeated questioning, a consistent history of exposure to radiation during an atomic tests [sic] series in 1962. If the details of his history are correct, he apparently suffered some actinic damage immediately following one blast, and may have experienced some gastrointestinal disturbances following two blasts. He also gives a history, admittedly anecdotal, of being radioactive [upon] monitoring with a Geiger counter following some of his exposures.

In subsequent years, he has shown some premature aging in hair and skin with apparent increased sensitivity for actinic

damage, persistent gastrointestinal distress and possible laryngeal and prostatic nonspecific changes which may or may not be attributed to radiation.

. . . .

Overall, the patient gives a history which would be consistent with some acute radiation effects, and possibly some residual effects. Possibility should [be] considered that some of his other processes may have been influenced by radiation so that his response to other states and the speed and rapidity of healing may have delayed and that some of the premature aging effects that he has shown could in fact possibly be attributed to radiation exposure.

R. at 573. In July 1991, Mr. Hardin was admitted to the hospital with anemia, blood in his stool, hemocult positive stools, and generalized pain. R. at 877. On discharge, the final diagnoses included "(1) Anemia, normocytic, normochromic cause undetermined, probably due to previous excess radiation in 1962 ... (3) Chronic pain syndrome, post radiation with neurological dysfunction involving the right arm and right leg." R. at 878.

In February 1992, Dr. Richard Furr sent a letter on the veteran's behalf to Mr. Hardin's representative. R. at 867–77. Therein, he opined that radiation exposure on Christmas Island in 1962 significantly contributed to the veteran's ailments. *Id.* Specifically, he stated the following:

[Mr. Hardin's incomplete quadriplegia] is probably due to late delayed myelopathy following exposure to radiation on Christmas Island in 1962. Chronic normocytic normochromic anemia is also a problem probably due to radiation exposure. Again no other cause can be found and this is a generally accepted problem caused by radiation exposure. Osteoporosis of the axial skeleton is probably due to radiation, inability to bear weight and lack of exercise.

*Id.* In May 1992, the RO denied entitlement to service connection for chronic pain syndrome, neuropathy, myelopathy, and normocytic, normochromic anemia, finding that "these conditions are not recognized as radiogenic diseases." R. at 917–19. In response, Mr. Hardin submitted an excerpt

from the Cecil Textbook of Medicine. R. at 931. On the copy submitted was the following notation from Dr. Furr: "This man has quadriplegia due to myelopathy due [to] radiation. Any layman can read the simple statements in this book concerning radiation and will know that." *Id.* In July 1992, the RO issued a confirmed rating decision, which the veteran appealed. R. at 942, 958.

At a June 1993 personal hearing, Mr. Hardin testified that he witnessed the explosions, on at least one occasion flew into the drop zone, and serviced the planes involved in nuclear tests on Christmas Island, and that he did not wear any protective clothing or a film badge. R. at 978. A Christmas Island Base Clearance document, dated May 22, 1962, reflects that the veteran cleared several listed departments, but the sign-off section for "Radiological Safety (Film Badge)" is blank. R. at 703. Mr. Hardin also stated that after some of the tests he was vigorously sick and that he received radiation burns on the left side of his face. R. at 979. The nuclear test dosimetry file, maintained by the Reynolds Electrical and Engineering Co., Inc., reports a Glenn M. *Harding* as receiving 0.000 roentgens of radiation, and the Air Force later concluded that, because the service number listed for this individual matched the veteran's, a spelling error had occurred. *See* R. at 354, 357, 444, 447, 695.

In the September 1994 BVA decision here on appeal, the Board denied his claims for service connection, finding that the presumptive provisions of 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d) did not apply. R. at 8–27. The Board stated that "[a]lthough the veteran qualifies as a 'radiation-exposed veteran' because of his participation in Operation DOMINIC, neither chronic pain syndrome, neuropathy, myelopathy, nor normocytic, normochromic anemia is one of the specified diseases to which the presumption applies." R. at 21. The Board dismissed the available physicians' opinions, relying on this Court's opinion in *Combee v. Principi,* 4 Vet.App. 78 (1993), *en banc review denied sub nom. Combee v. Brown,* 5 Vet.App. 248 (1993), and concluding that the diagnoses linking radiation exposure to his current conditions were based solely on the veteran's self-reported history. The Board further stated the following;

> As for the opinion of Dr. Furr that the veteran's claimed disabilities are probably due ... to radiation exposure, the veteran is precluded from establishing service connection based solely on his exposure to ionizing radiation.... As neither the specific statutory nor regulatory provisions pertaining to claims based on exposure to ionizing radiation apply, there exists no adequate evidentiary and legal basis to attribute the veteran's claimed disorders to any exposure to ionizing radiation in 1962.

R. at 22. The Board also addressed the possibility of service connection on a nonradiation basis, but determined that, as there was "no evidence of record that would bridge the gap between service and initial diagnosis of these conditions, the evidence, including that pertinent to service, does not establish that the disorders were present coincident with service." R. at 23.

## II. ANALYSIS

Service connection for a condition which is claimed to be attributable to ionizing radiation exposure during service may be established in one of three different ways. *Ramey v. Brown,* 9 Vet.App. 40, 44 (1996), *aff'd sub nom. Ramey v. Gober,* 120 F.3d 1239 (Fed.Cir.1997). First, there are 15 types of cancer which are presumptively service connected. 38 U.S.C. § 1112(c). Second, 38 C.F.R. § 3.311(b) (1996) provides a list of "radiogenic diseases" which will be service connected provided that certain conditions specified in that regulation are met. Third, direct service connection can be established by "show[ing] that the disease or malady was incurred during or aggravated by service," a task which "includes the difficult burden of tracing causation to a condition or event during service." *Combee v. Brown,* 34 F.3d 1039, 1043 (Fed.Cir.1994).

Qualification under the presumptive provision of 38 U.S.C. § 1112(c) occurs when a veteran suffers from one of the fifteen listed cancers, and establishes participation in a "radiation risk activity" defined as:

(i) Onsite participation in a test involving the atmospheric detonation of a nuclear device.

(ii) The occupation of Hiroshima or Nagasaki, Japan, by United States forces during the period beginning on August 6, 1945, and ending on July 1, 1946.

(iii) Internment as prisoner of war in Japan (or service on active duty in Japan immediately following such internment) during World War II which (as determined by the Secretary) resulted in an opportunity for exposure to ionizing radiation comparable to that of veterans described in clause (ii) of this subparagraph.

38 U.S.C. § 1112(c)(4)(B). The disorders from which Mr. Hardin suffers are not included in the statute. 38 U.S.C. § 1112(c)(2)(A-M). Thus, while the veteran is deemed a "radiation exposed veteran," for section 1112 purposes, the presumption of service connection for the unlisted health conditions is unavailable. *See Rucker v. Brown*, 10 Vet.App. 67, 71 (1997). Similarly, chronic pain syndrome, neuropathy, myelopathy, and normochromic anemia, are not listed among the specifically enumerated "radiogenic diseases." 38 C.F.R. § 3.311(b)(2)(iv),(xii),(xiii); *see also Ramey, supra.*

■ However, in *Combee*, the United States Court of Appeals for the Federal Circuit determined that service connection for an unlisted condition can be pursued under the general VA compensation entitlement system. *Combee*, 34 F.3d at 1043; *see* 38 U.S.C. § 1110 (basic entitlement to disability compensation for wartime veterans). In February 1995, pursuant to the Federal Circuit's *Combee* decision, the regulation governing adjudication of claims based on alleged exposure to ionizing radiation was changed to include conditions not listed but for which there is competent medical or scientific evidence. *Compare* 38 C.F.R. § 3.311(b)(2-3) (1994) *with* 38 C.F.R. § 3.311(b)(2-4) (1996). The relevant portion of the regulation states "If a claim is based on a disease other than one of those listed ... VA shall nevertheless consider the claim under the provisions of this section provided that the claimant has cited or submitted competent scientific or medical evidence that the claimed condition is a radiogenic disease." Without regard to the presumptions found in 38 U.S.C. § 1112 and 38 C.F.R. § 3.309, when a disease is first diagnosed after service, service connection may therefore be established by evidence demonstrating that the disease was in fact "incurred" during the veteran's service or by evidence that a presumption period applied. *See Combee* 34 F.3d at 1042 ("[p]roof of direct service connection ... entails proof that exposure during service caused the malady that appears many years later"); *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established").

■ In *Ramey*, this Court addressed the applicability of *Combee* to a claim for service connection for cancer in connection with ionizing radiation. *Ramey*, 9 Vet.App. at 45. There, the BVA decision was issued prior to the Federal Circuit's *Combee* opinion and change in the regulation, and the BVA failed to address the question of direct service connection. Unlike the circumstances in *Ramey* however, here Mr. Hardin has submitted competent evidence, including several medical opinions, that his current conditions are related to radiation exposure.

In his brief, the Secretary argues that the claims are not well grounded. In *Ramey* and *Rucker*, the Court held that remand to the Board to address whether direct service connection would apply was unnecessary, as the appellants in those cases had failed to present well-grounded claims because they lacked medical evidence of nexus between the alleged radiation exposure and a current condition. *Ramey*, 9 Vet.App. at 46; *Rucker*, 10 Vet.App. at 71–72. The record here shows that the Secretary's argument is without merit. Mr. Hardin has medical evidence in the form of physician opinions and treatises to support his claim for service connection for chronic pain syndrome, neuropathy, myelopathy, and normochromic anemia as caused by ionizing radiation; his claims are well grounded. *See Rucker, supra; see also Caluza v. Brown*, 7 Vet.App. 498 (1995). The

Court further finds that VA's duty to assist has been triggered. 38 U.S.C. § 5107(a). Finally, while the provided dose estimate reported that the veteran did not receive any significant level of radiation, the Board has failed to address Mr. Hardin's statement, supported by the Christmas Island Base Clearance document, which suggests his radiation level was not monitored.

In *Earle v. Brown,* 6 Vet.App. 558, 562 (1994), the Court expressly held that "VA could not rely solely upon the [Defense Nuclear Agency's] certification that there was no evidence that the veteran had participated in a radiation-risk activity." Rather, all relevant evidence of record must be considered and addressed. The dose estimate of radiation exposure provided to the Air Force is only one piece of evidence to be considered. Under the statutory criteria of 38 U.S.C. § 1112, Mr. Hardin's exposure to ionizing radiation would not be at issue were he suffering from one of the specifically listed disorders; he is a "radiation exposed veteran" as that term is defined and understood. 38 U.S.C. § 1112(c)(4)(A); *see also* 38 C.F.R. § 3.309. Further evidence of exposure include his physicians' statements, which opine that his current medical conditions are consistent with radiation exposure. Whether Mr. Hardin's diagnosed conditions are related to radiation is a question which requires medical expertise. Mr. Hardin has offered medical evidence, including statements of a VA doctor, which support his claim of service connection. In the present case, as in *Earle,* a remand is necessary to allow the Board the opportunity to address the appellant's arguments and all the evidence of record, including the several medical opinions, and to apply the benefit of the doubt if it finds the evidence to be in equipoise. *Earle,* 6 Vet.App. at 562.

█ The Court holds that in the instant case, the Board—relying exclusively on the Air Force's assessment of Mr. Hardin's radiation exposure—erred by employing its own unsubstantiated medical opinion to answer whether the claimed conditions were related to service, and disregarded Mr. Hardin's supporting medical evidence. The Court further holds that this error was prejudicial. 38 U.S.C. § 7261(b). In *Colvin v. Derwinski,* 1 Vet.App. 171 (1991), we held that the Board may not substitute its own medical judgment for independent medical evidence. *See also Cosman,* 3 Vet.App. at 506; *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992) (*Hatlestad II* ); *Budnik v. Derwinski,* 3 Vet.App. 185, 187 (1992); *Quarles v. Derwinski,* 3 Vet.App. 129, 139 (1992); *Tobin v. Derwinski,* 2 Vet.App. 34, 39 (1991). While the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more important, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *Colvin,* 1 Vet.App. at 175; *see also Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991) (*Hatlestad I* ); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990).

### III. CONCLUSION

Accordingly, the Board's September 21, 1994, decision is VACATED. Mr. Hardin's claims for service connection for chronic pain syndrome, neuropathy, myelopathy, and normochromic anemia are REMANDED for adjudication consistent with 38 C.F.R. § 3.311. On remand, the appellant will be free to submit additional evidence and argument, and the Board must seek any other evidence it thinks is necessary to the resolution of the appellant's claim. *Quarles,* 3 Vet.App. at 141.