# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1345

FRANK E. COBURN, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On appeal from the Board of Veterans' Appeals

(Decided    January 26, 2006    )

*Theodore C. Jarvi*, of Tempe, Arizona, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant Counsel; and *Alice M. Szynklewski*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, LANCE, and SCHOELEN, *Judges*.

KASOLD, *Judge*, filed the opinion of the Court.  LANCE, *Judge*, filed a dissenting opinion.

KASOLD, *Judge*: Veteran Frank E. Coburn appeals through counsel a March 24, 2003, decision of the Board of Veterans' Appeals (Board) that denied entitlement to service connection for residuals of left and right leg injuries, and left and right hip injuries.  The Secretary argues that the appeal must be remanded pursuant to *Stegall v. West*, 11 Vet.App. 268 (1998), because the specific instructions contained in a March 2001 Board remand order to secure a medical examination were not followed.  Mr. Coburn is satisfied with the medical report and does not raise the issue of any such error.  He argues that the Board decision is clearly erroneous and should be reversed.  For the reasons set forth below, the Board's decision will be set aside and remanded.

## I. BACKGROUND

Mr. Coburn served on active duty in the U.S. Army from January 1954 to January 1956.

Record (R.) at 26. The National Personnel Records Center reports that all of Mr. Coburn's service medical records are missing and presumed destroyed in a 1973 fire. R. at 50, 626. In February 1994, Mr. Coburn filed a claim for service connection for bilateral hip and leg injuries stating that his injuries were sustained in service when he jumped from a telephone pole while assigned at Fort Leonard Wood, Missouri. R. at 79. His sister subsequently supported his claim with a statement that she knew of the telephone pole incident from her mother, who told her about it while Mr. Coburn was assigned at Fort Leonard Wood, Missouri.

A March 2001 Board decision noted that "the veteran and his family have to some extent laid the groundwork for inservice injuries, and there is evidence with regard to post-service injuries and disabilities" but found that "although there are some VA records in the file, there is no medical opinion of record which analyzes the potential relationship between any service injury(ies) and/or inservice and post-service symptoms." R. at 594. The 2001 Board remanded the claims presently on appeal with instructions to arrange an orthopedic examination to ascertain the current nature, severity, and etiology of any orthopedic disorders of either leg or hip. R. at 595-99.

An examination was undertaken in October 2002. The examiner noted in his report that he had reviewed the claims file and the submitted medical history, and concluded that it was "at least as likely as not" that the leg and hip problems had their onset in service as a result of the telephone pole incident. R. at 658. The examiner also stated that "given that the patient denies other history of traumas or falls, this is the most likely explanation in my medical opinion." R. at 658. The report of the October 2002 examination is the only medical nexus report on record for Mr. Coburn.

In the decision on appeal, the 2003 Board rejected the examiner's opinion as incompetent because it appeared "to be based solely upon the veteran's own statements regarding his medical history." R. at 21. That Board stated that "the examiner's review noted the absence of medical evidence of an injury to the veteran's legs in service" and that the examiner "appears to have ignored the sequela of numerous left knee injuries after service beginning in 1975 in forming this opinion." R. at 21. The Board concluded that there was no competent evidence linking any of Mr. Coburn's medical disabilities to service and denied his claims. R. at 21-22.

## II. ANALYSIS

### A. Waiver of Stegall and Other Bases for Remand

The Secretary argues that this matter must be remanded pursuant to *Stegall* to enforce compliance with the 2001 Board's remand order that, inter alia, ordered a VA regional office (RO) to provide Mr. Coburn with a VA orthopedic examination for the purpose of ascertaining a medical nexus opinion. Secretary's Brief (Br.) at 15. The Secretary asserts that although Mr. Coburn was given an orthopedic examination, this examination did not comply with the 2001 Board remand order because in making his decision the medical examiner did not review the medical records or the claims file, which was specifically required by the remand order. Secretary's Br. at 16-17. Mr. Coburn, on the other hand, argues that he is satisfied with the medical examination report and does not seek another examination, and he further argues that *Stegall* provides procedural rights to the veteran, not the Secretary. Additionally, Mr. Coburn argues that he does not contest the Board's determination in the section of its decision entitled "REASONS AND BASES FOR FINDINGS AND CONCLUSIONS, *Preliminary matter: Duty to Assist*" (R. at 4 through 7) and that he "does not seek a remand for purposes of additional development." Appellant's Br. at 7-8.

The Court notes that the right to "compliance with the remand orders" provided in *Stegall* is a process right guaranteed to VA claimants, not the Secretary. *See Stegall*, 11 Vet.App. at 271 (finding that remand by the Court or the Board "*confers on the veteran* or other claimant, as a matter of law, the right to compliance with the remand orders" and imposes on the Secretary a "concomitant duty to ensure compliance with the terms of the remand" (emphasis added)). Moreover, it is the appellant, not the Secretary, who has the right to appeal a decision by the Board to the Court. *See* 38 U.S.C. § 7252(a) (stating that the Secretary may not seek review of a Board decision); 38 U.S.C. § 7266(a) ("In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person *adversely affected* by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed . . . ." (emphasis added)); *see also Padgett v. Nicholson*, 19 Vet.App. 133, 150 (2005), *withdrawn on other grounds*, 19 Vet.App 334 (2005) ("'Secretary [ ] clearly has no right of appeal to this Court.'"); *Williams v. Principi*, 15 Vet.App. 189, 198 (2001) (citing section 7252(a) for the

proposition that the Secretary may not seek review of a Board decision). Therefore, the Court will not grant a *Stegall* remand in the face of opposition by Mr. Coburn.

Mr. Coburn argues that reversal is appropriate in this case and he further states that he does not seek remand for the purposes of additional development. However, reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision. *See Johnson v. Brown*, 9 Vet.App. 7, 10 (1996). Generally, where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998); *see also* 38 U.S.C. § 7104(a), (d)(1) (stating that decisions of the Board shall be based on applicable provisions of law and regulation and that the Board shall provide a written statement of reasons or bases for its conclusions); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court").

The Court also notes, however, that, in contrast to a *Stegall* remand for compliance with a Court order, which is a right guaranteed to an appellant, a remand on other grounds, particularly one necessitated because appellate review is frustrated because of inadequate reasons or bases, is not exclusively an appellant's right. Upon review of the record and the Board decision, and as discussed below, the Court finds that the Board decision is defective in its reasons or bases thereby preventing proper review by the Court and concludes that remand, not reversal, is the appropriate remedy. *See Tucker* and *Johnson*, both *supra*; *see also Kowalski v. Nicholson*, 19 Vet. App. 171, 179 (2005) (duty of Board to fully explain its decision is heightened when records are lost); *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991) (same).

Regarding Mr. Coburn's assertion that he does not seek remand for further development, the Court notes that there is no clear indication in the appellant's briefing that he is knowingly and intentionally seeking to waive his right to a remand. *See Janssen v. Principi*, 15 Vet.App. 370, 373 (2001) (holding that to waive a procedural right a represented appellant "must first possess a right, he must have knowledge of that right, and he must intend, voluntarily and freely, to relinquish or surrender that right"). Moreover, in the overall context of his briefing, the Court perceives the assertion that remand is not being sought as an argument meant to bolster Mr. Coburn's position that

4

reversal is the appropriate remedy and not, as the dissent perceives, as an explicit waiver of a remand. Indeed, in this instance, waiver of a remand would, in essence, constitute an abandonment of the appeal. Unlike the dissent, the Court is not inclined to stretch Mr. Coburn's arguments to this extent.

### B. Inadequate Reasons and Bases

For service connection to be awarded, there must be (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances, lay evidence of an in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Hickson v. West*, 12 Vet.App. 247, 253 (1999). The absence of any one element will result in the denial of service connection. In this case, Mr. Coburn states that he injured his knee while in service. His sister reports hearing about the in-service incident. His injury, however, cannot be confirmed by his service medical records because almost all of them are lost, through no fault of Mr. Coburn. He has numerous postservice injuries that arguably could be the cause of his claimed current disabilities. The only medical nexus opinion in the record opines that Mr. Coburn suffers from his claimed disabilities and that these disabilities are "at least as likely than not" related to his in-service injury. R. at 658. In rendering his opinion, the medical examiner stated that he had reviewed the claims file and all available medical records.

The Board could have found that the evidence preponderated against Mr. Coburn's having suffered the reported in-service injury.[1] It did not. The Board could have found that Mr. Coburn had no current disability. It did not. Or, the Board could have found that he suffered the reported in-service injury but that there was no medical nexus between that injury and his current disability. The Board did not; at least its reasons or bases do not adequately support that conclusion.

Rather, the Board rejected the medical report because the Board found that the report failed to address the postservice injuries suffered by Mr. Coburn, leading the Board to conclude that the medical examiner had not considered the entire file. That conclusion, however, is in stark contrast to the statements made by the medical examiner in the medical report. The medical examiner not

---

[1] We note only possible options of the Board with regard to the elements of service connection and do not imply that any possible finding would have been appropriate on the evidence in the record.

5

only explicitly stated that he reviewed the claims file and all medical reports provided, he also explicitly noted that the appellant's "pertinent past medical history and findings" were in the claims file (R. at 656), and he concluded his report by stating that "[g]iven that the patient denies other history of traumas or falls," the most likely explanation was that his current disabilities were "at least as likely as not" the result of his in-service injury (R. at 658).

In reaching the conclusion that the medical examiner had not reviewed the claims file, the Board did not address the repeated statement by the medical examiner that he had reviewed the claims file or his specific reference to the appellant's "pertinent past medical history and findings" that were in the claims file. Given the examiner's explicit acknowledgment of the appellant's past medical history as being part of the claims file that he had reviewed, the Board should have discussed whether the medical examiner's statement that Mr. Coburn denied other injuries (which led the medical examiner to conclude his current disabilities were related to the in-service injury) constituted a denial of any postservice injuries or, instead, postservice injuries not addressed in the claims file. Inasmuch as the Board rejected the medical report because the Board concluded the medical examiner failed to consider the claims file, the Board had a duty to adequately discuss those aspects of the report clearly indicating the conclusion opposite that of the medical examiner's. *See Fortuck*, 17 Vet.App. 173, 179 (2003) (It is incumbent upon the Board to "analyze the credibility and probative value of the [material] evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant." (citations omitted)); *Meyer v. Brown*, 9 Vet.App. 425, 433 (1996) (Board cannot reject evidence favorable to claimant without providing an adequate statement of reasons or bases for its decision). This duty is heightened when, as here, service medical records are lost through no fault of a claimant. *See Russo v. Brown*, 9 Vet.App. 46, 51 (1996) (when service medical records are presumably destroyed, Secretary has heightened duty to assist the appellant in developing his claim, and Board has a heightened duty to "evaluate and discuss in its decision all of the evidence that may be favorable to the appellant").

The Board also rejected the medical report because the Board determined that the examiner had relied on the testimony of Mr. Coburn. However, reliance on a veteran's statements renders a medical report incredible only if the Board rejects the statements of the veteran. *See Kowalski*, *supra*

6

(citing *Wilson v. Derwinski*, 2 Vet.App. 614, 618 (1992), for the proposition that Board may not disregard a medical opinion *solely* on the rationale that the medical opinion was based on a history given by the veteran); *see also Reonal v. Brown*, 5 Vet.App. 458, 460 (1993) (finding Board may reject medical opinion based on facts provided by the veteran previously found to be inaccurate); *Swann v. Brown*, 5 Vet.App. 229, 233 (1993) (finding Board is not bound to accept uncorroborated account of veteran's medical history but must assess the credibility and weight of the evidence provided by the veteran rejecting it). In this instance, the Board addressed what it determined were conflicting facts but it never rendered a finding with regard to the credibility of Mr. Coburn's statements to the medical examiner. *See Swann* and *O'Hare*, both *supra*. Either the medical report was improvidently rejected (because Mr. Coburn's statements were credible) or the Board failed to provide an adequate statement of reasons or bases with regard to any unstated finding that Mr. Coburn's statements were not credible.

We further note that the rejection of the medical report in this instance – the only one in the record – left the record largely in the same condition it was in when the 2001 Board remanded the matter for the purpose of obtaining a medical nexus assessment because the claims file contained no such assessment. R. at 594. Yet, the 2003 Board failed to explain why it could proceed to render a decision on the claim when, based on basically the same evidence, the 2001 Board determined that a remand for a medical nexus opinion was necessary. The Board is required to provide a full explanation of the reasons or bases for its decisions. *See* 38 U.S.C. § 7104(a), (d)(1); *Allday*, *supra*; *see also* 38 U.S.C. § 5103A; *Wells v. Principi*, 326 F.3d 1381, 1384 (Fed. Cir. 2003) (stating that section 5103A(d) places a duty on Secretary to provide a medical examination or opinion where such opinion is necessary to make a decision on veteran's claim for disability compensation).

Finally, we caution the Board that, although it may reject medical opinions, it may not then substitute its own medical judgment for those rejected. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356, 1360 (Fed. Cir. 1998); *see also Hardin v. West*, 11 Vet.App. 74, 79 (1998) (Board may not substitute its own medical judgment for independent medical evidence). When the only medical nexus evidence is rejected because the report is confusing or appears incomplete, it may be sent back for clarification or a new report may be obtained, *see Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (finding that under 38

7

C.F.R. § 19.9 (2000), "if further evidence or clarification of the evidence . . . is essential for a proper appellate decision," the Board shall remand the case to the RO); 38 C.F.R. § 19.9(a) (2003). If the Board determines it can render a decision on the claim in the absence of any medical nexus information, it must provide an adequate statement of reasons or bases for that determination and its ultimate decision.

On remand, Mr. Coburn will have the opportunity to present any additional evidence and argument in support of his claim, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court expects that the Secretary will provide expeditious treatment of this matter on remand. *See* 38 U.S.C. § 7112.

### III. CONCLUSION

Based on the foregoing analysis, the decision of the Board is SET ASIDE and the matter is REMANDED for further development consistent with this opinion.

LANCE: *Judge*, dissenting: While I generally agree with the blackletter law articulated by the majority, I disagree with its application of the law to the facts of this case. The majority's finding of a reasons-or-bases error is an attempt at fashioning a remedy around the appellant's unequivocal waiver of all issues other than the adequacy of the evidence. To support his claim for reversal, the appellant made a strategic decision to forego review of the adequacy of development of his case and to vehemently attack the Secretary's suggestion that this case should be remanded. This Court should not disregard the appellant's knowing and voluntary waiver. For these reasons, and for the reasons that follow, I must respectfully dissent.

### I. THE MAJORITY'S REASONS OR BASES REMAND

My disagreement with the majority's reasons-or-bases analysis can be stated in a nutshell. I believe that the Board's statement of reasons or bases was adequate because it is clear that the Board concluded that the only medical nexus opinion of record was based on an inaccurate factual premise. The basis for that conclusion was that the voluminous evidence of record contradicted a reasonable interpretation of the medical opinion's plain language. The majority places a much higher burden on the Board to meticulously dissect the medical opinion and to explicitly reject every

interpretation of it other than the one it clearly chose. As detailed below, I do not believe this failure to explicitly address all other interpretations frustrates our review of whether the evidence supports the Board's unambiguous conclusion that the medical opinion was based on a faulty premise. Applying an unnecessarily high reasons-or-bases standard rather than deciding the issue presented perpetuates the hamster-wheel reputation of veterans law and ignores the appellant's pointed argument that "[h]aving had his claims in adjudication for ten years, he believes that the evidence of record is adequate for grant of service connection." Appellant's Br. at 8.

There is no dispute that a medical opinion based on an inaccurate factual premise is not competent evidence. *See Reonal v. Brown*, 5 Vet.App. 458, 460-61 (1993) (an opinion based upon an inaccurate factual premise has no probative value). There is no question that an opinion is based on an inaccurate factual premise if it assumes an injury in service that the Board finds did not occur. *Id.* In my view, a medical opinion is also based on an inaccurate factual premise when it assumes that there were no intervening injuries between service and the examination, and that assumption is contrary to the Board's express findings. That is the case here. The medical nexus opinion at issue is based on a faulty premise, and there is no way to determine from the report what the doctor's opinion would have been had he considered the factual basis accepted by the Board. Accordingly, it is not competent evidence on the medical nexus issue.

The majority glosses over the facts surrounding the medical opinion with a two-sentence summary of its conclusion. I would add the following: Despite the examiner's assertion that the appellant's medical records were reviewed, every paragraph of the "History of Present Illness" section begins with "The patient reports" or "he reports." R. at 656. Furthermore, despite the plethora of medical evidence that documented a knee injury in a car accident 20 years after service (which began a documented period of continuous complaints, re-injuries and treatment), *see infra*, the medical opinion contains no mention of the accident or any of the appellant's subsequent complaints and treatment. The Board seized on these facts in observing that the doctor's opinion "appears to be based entirely on the medical history elicited from the veteran" and that the doctor "appears to have ignored the sequela of numerous left knee injuries after service beginning in 1975 in forming this opinion." R. at 20-21. The Board cited several cases stating that a medical opinion based on an inaccurate factual premise supplied by the veteran is of no probative value and

concluded "[t]here is no competent evidence linking any of [the appellant's] disabilities to service." R. at 21.

To the extent that the majority relies on an ambiguity in the medical opinion, I believe that it is the Board's responsibility to interpret the evidence in the first instance and that we must give deference to its interpretation. *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992). In this case, the doctor asserted in his report that he had reviewed all of the prior medical evidence. R. at 656. However, his ultimate conclusion was: "Given that the patient denies other history of traumas or falls," his current disabilities were "at least as likely as not" the result of his in-service injury. R. at 658. The quoted language makes clear that the premise of the doctor's opinion is that the appellant sustained no other intervening injuries. To the extent this conclusion could be questioned, we must defer to the Board's reasonable interpretation as not clearly erroneous. *See Hersey*, *supra*. As the Board discussed in great detail, there is an overwhelming quantum of evidence in the record that the premise of no intervening injury is false. R. at 297, 345-47, 405, 517, 521, 524, 535, 537. The Board's decision extensively discusses the medical records dating from 1975, which amply document the postservice automobile accident where the appellant's left knee was injured and the additional injury he sustained while unloading the vehicle before seeking medical treatment. R. at 8. The Board continued by discussing the medical records that documented the appellant's many medical complaints and re-injuries in the months and years following the accident. R. at 8-14. The Board further acknowledged that in February 1999, the appellant denied that the 1975 automobile accident had ever occurred. R. at 15. In its analysis, the Board states that there is no evidence of a left knee problem "until May 1975, nearly 20 years after discharge. The bulk of medical evidence thereafter reflects treatment for knee complaints . . . that occurred in a motor vehicle accident in May 1975. Following this accident, the veteran's medical history reveals a lengthy course of left knee problems, including re-injuries thereafter." R. at 19. When I read the Board's decision, I have no trouble understanding how the Board interpreted the medical opinion or what evidence it relied on in rejecting its factual premise. Even though the medical opinion is disturbingly inconsistent, the Board's interpretation of it is not. As we are not reviewing the medical opinion itself for an adequate statement of reasons or bases, I do not believe that the Court's review has been frustrated.

The majority places great emphasis on the Board's conclusion that the doctor did not review the appellant's claims file. Given the wealth of medical evidence of an intervening accident, the phrasing of the medical history, and the complete absence of any mention of the records of the accident in the doctor's report, the Board reasonably discredited the doctor's claim to have reviewed the whole claims file. Moreover, the appellant does not benefit from the alternative interpretation. It could be true that the doctor reviewed the entire claims file but chose to believe the appellant's denial of a history of intervening injuries. However, this would not render the doctor's opinion competent evidence. It does not matter why the doctor accepted the false premise that the 1975 car accident injury did not occur. What matters is that the Board cited ample evidence that his conclusion was based on a false premise and, therefore, was not competent evidence.

The majority also places emphasis on the fact that the doctor's opinion makes a boilerplate reference to having reviewed the appellant's medical history. R. at 656. However, the Board acknowledged that "the examiner noted that the claims file was reviewed during this examination." R. at 20. In my view, the majority's assertion that a more thorough discussion was required misapplies the burden. Our review is not frustrated where we understand the Board's conclusion (the opinion was incompetent because it assumed no intervening injuries) and what evidence is relied on to reach this conclusion (the language of the opinion and the ample evidence of an intervening injury). *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (deriving our reasons-or-bases standard from *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973), and *Int'l Longshoremen's Ass'n. v. Nat'l Mediation Bd.*, 870 F.2d 733, 735 (D.C. Cir. 1989)). We are in a position to determine whether the Board's conclusion was clearly erroneous, and remanding this case for the Board to further parse the irredeemably ambiguous opinion cannot change its language or the ample evidence that proves that the appellant did suffer an intervening injury. Such a remand "'unnecessarily impos[es] additional burdens on the BVA and . . . VA with no benefit flowing to the veteran.'" *Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994) (quoting *Soyini v. Principi*, 1 Vet. App. 540, 546 (1991)). Barring a completely gratuitous change of heart by the Board, the only thing that could change the outcome on remand would be further development of the claim. However, the appellant made clear in his opening brief that "[h]e does not seek a remand for purposes of additional development." Br. at 8. He wants us to review the Board's rejection of the medical opinion and its ultimate denial of service

11

connection for clear error. Unlike the majority, I accept the appellant's belief that 10 years of development is enough and I am willing to review the issue he has presented.

Turning to the issue actually raised by the appellant, I cannot support an award of compensation benefits based on an inadequate and clearly questionable medical opinion. Accordingly, since I find that the appellant has purposefully and unequivocally abandoned and waived consideration of all issues that would warrant a *Stegall* remand or a remand for additional development, including clarification of the 2002 VA examiner's opinion or a new VA medical examination, *see infra*, I would affirm the Board's denial of service connection on the grounds that there is no competent, probative credible evidence of record linking the appellant's current disabilities to an event or injury in service.

## II. THE APPELLANT'S WAIVER OF OTHER ISSUES

Despite the preceding analysis, I must state that I do not agree with the Board's denial of service connection in this case. Had the issue been presented for our review, I would have remanded this matter to the Board – as the Secretary has suggested – based on the RO's apparent failure to comply with the Board's 2001 remand order. Nonetheless, I find that the appellant, who is represented by counsel, has knowingly and voluntarily waived the true remandable error in this matter, and therefore, I would affirm the Board's decision.

Upon finding that the 2002 VA medical examiner's opinion was not competent to provide the necessary medical nexus opinion linking the appellant's claimed disabilities to service, the Board was *required* to return the case to the RO for an adequate medical examination, in accordance with the Board's prior remand order, the Secretary's statutory duty to assist, and controlling regulations. *See* 38 U.S.C. § 5103A(d) (Secretary shall provide a medical examination or obtain a medical opinion when necessary to make a decision on the claim); *Stegall v. West*, 11 Vet.App 268 (1998) (remand by the Board confers on the veteran the right to compliance with the remand order and imposes on the Secretary the concomitant duty to ensure compliance); 38 C.F.R. § 4.2 (2004) (if examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes). Rather than remand the matter, the Board proceeded to deny service connection on the basis that there was no competent medical evidence

linking the appellant's claimed disabilities to service. This was remandable error. *See* 38 U.S.C. § 5103A(d); *Stegall*, *supra*; *Green v. Derwinski*, 1 Vet.App. 121,124 (1991) ("[F]ulfillment of the statutory duty to assist [requires] a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one."); *see also Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993) (same). The examiner's opinion should have been rejected by the Board, and the Board should have sought clarification of his opinion or provided the appellant with another VA examination that complied with the 2001 remand order. *Cf. Mariano v. Principi,* 17 Vet.App. 305, 311 (2003) ("[R]eliance on such a noncomplying examination in adjudication, especially where it is the principal evidence upon which the Board relied, is not permissible.").

However, on appeal to this Court, the appellant, through counsel, has stated in no uncertain terms that he does not want the Court to consider this error. First, the appellant's opening brief does not allege any failure by the Secretary to comply with the Board's 2001 remand order, and therefore any error in that regard should be deemed abandoned. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993); *cf. Henderson v. West*, 12 Vet.App. 11, 18-19 (1998) (deeming claims abandoned where appellant did not address them in initial brief, but asserted them in reply brief). Second, if there was any doubt that the appellant intended to waive his right to compliance with the prior remand, in response to the Secretary's urging a *Stegall* remand, the appellant opposed the granting of that relief and argued:

> A remand by the Court or the Board confers *on an appellant* the right to VA compliance with the terms of the remand order. In this case the appellant is quite comfortable with the orthopedic examination which he received following the [Board] remand and does not seek another. . . . *Stegall* only requires that the [RO] follow the [Board's] instructions, that is exactly what happened in this case.

Reply Br. at 1-2 (emphasis in original). Clearly, the appellant has taken the position that the VA medical examination complied with the terms of the remand order and therefore a *Stegall* remand is not warranted.

Furthermore, concerning the duty-to-assist issue, in an effort to clearly frame the issues on appeal to the Court, the appellant, in his opening brief, included a section entitled "Preliminary Statement - What is Not Being Appealed." Br. at 7-8. Therein he explicitly stated that he "does not

raise any issues regarding inadequate development of his case. Having had his claims in adjudication for ten years, he believes that the evidence of record is adequate for grant of service connection of his bilateral hip and leg conditions. *He does not seek a remand for purposes of additional development*." Br. at 7-8 (emphasis added). He further stated that he is "in agreement with Finding of Fact #1 in the [Board] decision which states that the RO has notified [him] of the evidence needed to substantiate the claim and has *obtained and fully developed all evidence necessary* for the equitable disposition of the claims" and he does not contest the Board's statement of reasons or bases for findings and conclusions regarding the "duty to assist." Br. at 7 (emphasis added). Finally, in his conclusion he again stated his position that "the Secretary is not entitled to argue now that the case needs to be remanded to obtain a new VA examination just because it doesn't like the examination it got the first time. There is no matter on appeal that supports such an argument for remand. Equity calls for the case to be decided on the evidence of record." Br. at 18.

The foregoing excerpts from the appellant's briefs clearly and unequivocally demonstrate that the appellant, through counsel, has made a purposeful decision to forego his right to procedural compliance with the Board's 2001 remand order, and has decided that he does not want this Court to consider any error in the development of his case. If there was any doubt as to the appellant's desire, his reaction to the Secretary's brief eliminated it. When presented with the suggestion that this case be remanded, the appellant vigorously asserted that the Secretary had no power to raise the error he was trying to concede. Appellant's Reply Br. at 1-2. The appellant has engaged in a deliberate strategy to limit our review to the sufficiency of the evidence based on the theory that the Secretary is estopped from finding that a VA medical opinion is incompetent when he adjudicates a claim on the merits after a *Stegall* remand. We should not override his decision and we should decide the argument that he has raised. *See Janssen v. Principi*, 15 Vet.App. 370, 374-75 (2001) (permitting appellant to explicitly waive the Court's consideration on appeal of any duty-to-assist and VCAA notice error). However, because I do not believe that two wrongs make a right, I would affirm the Board decision. A *Stegall* error cannot cloak a medical opinion in false competence where it is based on an inaccurate factual premise.

In my view, the appellant's position before the Court is analogous to an invocation of 38 C.F.R. § 3.655(b) (2005) at the VA level. That regulation provides that "when a claimant fails

14

to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record." *Id.* The appellant has stated before the Court "[h]e does not seek a remand for purposes of additional development" (Br. at 7-8) and that "[e]quity calls for the case to be decided on the evidence of record" (Br. at 18). Just as the appellant can force an adjudication of the existing evidence by the Board, I believe that an appellant who is represented by counsel and who is unambiguous in his wishes can do the same at this level. My caveat is that appellants should be aware that explicitly waiving obvious procedural errors does not entitle them to special consideration of the arguments they choose to make.

The majority critiques my position by saying: "[I]n this instance, waiver of a remand would, in essence, constitute an abandonment of the appeal." In my view, however, their suggestion puts the cart before the horse because the majority can only make this claim by deciding the issue that the appellant has raised *before* deciding whether to accept his waiver of remandable error. The appellant before VA could not retroactively *un*refuse to report for an examination under § 3.655(b) after the Board decides his claim based on the evidence of record. Similarly, we must decide what issues the appellant is waiving before we evaluate the merits of the issues presented. His choice to raise only unmeritorious arguments does not constitute an abandonment of an appeal. Accordingly, I would accept the appellant's waiver, address the merits of the issue he has chosen to raise, reject his argument, and deny the appeal on the merits, not on a theory of abandonment.

The majority's contrary characterization of this procedurally sound and accepted judicial position actually reveals their disappointment that the appellant has foresworn the remandable error in this case. However, our role as appellate judges is to decide the issues raised on appeal based on the record of proceedings before the agency. Advocates and parties are charged with the responsibility to build and develop that record. In that process, counsel, claimants, and the Secretary may make tactical and strategic choices. Once made, those choices, however improvident they may appear in retrospect, become a part of the proceeding, and it is not our role as judges to overrule those strategic litigation decisions of represented appellants. Acting otherwise merely contributes to the congestion of an overburdened system at the expense of thousands of eligible claimants who await adjudication.

15

Had the appellant's position been correct, his decision to waive the remandable error in this case would have put him substantially closer to having money in hand. However, his gamble in rejecting the Secretary's concession of error should fail and the consequence should be that he must now seek to reopen his claim with new and material evidence. By paternalistically manufacturing a remand and taking the risk out of the appellant's brinksmanship, the majority encourages appellants to take extreme litigation positions and discourages them from working with the Secretary where there is remandable error, as the Secretary conceded in his brief in this case. This decision will lead to less cooperation in cases that should be disposed by joint motions for remand. Appellants have the right to waive remandable error, but they should not be encouraged to do so based on the belief that the Court will find a way to implicitly undo their waiver if their argument for reversal fails. For that reason, and the reasons stated above, I disagree with the majority's approach to this case and must respectfully dissent.